Eric Scott DONOHO a/k/a Eric
S. Donoho, Appellant,

v.

The STATE of Texas.

No. 2–99–215–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 1, 2001.

Rehearing Overruled March 8, 2001.

Suzanne Hudson, Arlington, for appellant.

Tim Curry, Criminal District Attorney, Charles Mallin, Chief Assistant District

Attorney for Appellate Section, Sylvia Mandel, John Cope, and John Carlough, Assistant District Attorneys, Fort Worth, for appellee.

PANEL A: DAY and GARDNER, JJ.; and FARRIS, J. (Retired, Sitting by Assignment).

## OPINION ON REHEARING

DAY, Justice.

## I. INTRODUCTION

We have reconsidered our prior opinions upon appellant's motion for rehearing. We deny appellant's motion for rehearing, withdraw our opinions and judgment of December 28, 2000, and substitute the following.

A grand jury indicted Appellant Eric Scott Donoho on two counts of aggravated assault on a public servant. A jury determined that Appellant had used or exhibited a deadly weapon during the commission of the offenses and returned a guilty verdict on both counts. After finding the enhancement paragraph to be true, the jury assessed punishment at 75 years' confinement for each offense. Appellant brings four issues on appeal challenging both his conviction and punishment.

We affirm.

## II. BACKGROUND

On January 27, 1999, Appellant was detained during the investigation of a misdemeanor offense, burglary of a motor vehicle. After confirming that Appellant and his companion had taken a lockbox containing several thousand dollars from a vehicle in a Winn–Dixie parking lot, the police told Appellant that he was under arrest. As Felipe Carmichael, a North Richland Hills police officer, tried to handcuff Appellant, Appellant broke free and began to run. Carmichael pursued Appellant on foot, as did Officer Michael Shelley and Sergeant Kenneth Bounds. During the chase, Appellant tripped and fell. As Shelley approached him, Appellant got to his feet and tackled Shelley. Appellant and Shelley began wrestling on the ground. When the other officers caught up to the two struggling men, Bounds poked Appellant with his asp baton [1] and ordered him to stop resisting arrest. Appellant ignored Bounds's command and continued to struggle with Shelley. Carmichael then jumped into the melee.

As Carmichael and Shelley tried to roll Appellant onto his stomach to handcuff him, Carmichael noticed that Appellant had his hands clutched at his stomach area. Concerned about Appellant's behavior, Carmichael grabbed Appellant's left wrist. Carmichael saw that Appellant was trying to use his left hand to conceal the shiny metal object he was holding in his right hand. Carmichael initially thought the object was a knife and grabbed Appellant's right wrist. Appellant's hands separated and Carmichael saw that the shiny object was actually a gun. Carmichael shouted, "He's got a gun, he's got a gun" and lunged for Appellant's right hand. Carmichael slipped and Appellant thrust the gun directly into the officer's face. Carmichael grabbed Appellant's wrist again and shoved the gun out of his face just before Appellant fired it. The bullet just missed Shelley.

Appellant continued wrestling and shouted "F* * * you" as he fired another shot. Carmichael eventually freed one of his hands and unholstered his weapon. Carmichael put his gun to Appellant's head and ordered him to drop his weapon. Bounds was able to take the gun from Appellant, but Appellant continued to struggle. Carmichael put his gun to Appellant's head again and told him to stop resisting. When Appellant ignored his command, Carmichael had to reholster his weapon so he and Shelley could physically subdue Appellant.

---

1. An asp baton is an expandable metal police baton.

## III. LEGAL SUFFICIENCY OF THE EVIDENCE

■ In Appellant's first issue, he contends the evidence was legally insufficient to support his convictions. In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex. Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). The judgment may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App. 1991).

■ On appeal, Appellant argues that the evidence is legally insufficient because the only evidence offered to prove the offenses should have been disregarded by the jury. At trial, after the State rested at guilt-innocence, Appellant requested jury instructions under articles 14.01, 14.02, and 38.23 of the code of criminal procedure.[2] The trial court granted the request and included the instructions. During closing argument, Appellant asserted that the initial arrest was illegal because the officers did not have a warrant and the offense they were trying to arrest him for, burglary of a motor vehicle, did not fall within any of the warrantless arrest exceptions. *See* TEX.CODE CRIM.PROC.ANN. arts. 14.01, 14.03 (Vernon 1977 & Supp.2001); TEX.PE-NAL CODE ANN. § 30.04(a), (d) (Vernon

Supp.2001). Appellant argues that because the officers were without authority to arrest him, the exclusionary rule required the jury to disregard the evidence arising after the illegal arrest.[3] We disagree.

■ Under the Texas exclusionary rule, evidence obtained in violation of state or federal law may not be admitted against the accused in a criminal case. TEX.CODE CRIM.PROC.ANN. art. 38.23. However, article 38.23 does not require the exclusion of evidence that a crime was committed *after* an unlawful arrest. *See State v. Mayorga,* 901 S.W.2d 943, 945–46 (Tex.Crim.App. 1995); *Cooper v. State,* 956 S.W.2d 95, 97–98 (Tex.App.—Tyler 1997, pet. ref'd). This is because the "obtained in violation of the law" language in article 38.23 " 'contemplates that a crime has been committed; that evidence of that crime exists; and that officers violate the law in attempting to obtain evidence of the *previously* committed crime.' " *Cooper,* 956 S.W.2d at 97 (quoting *Mayorga,* 901 S.W.2d at 945–46). Because the aggravated assaults committed by Appellant occurred *after* the warrantless arrest, that evidence was not "obtained in violation of the law." *Id.* As a result, the evidence establishing the commission of the offenses was properly before the jury. Because Appellant does not otherwise attack the legal sufficiency of the evidence, issue one is overruled.

## IV. FACTUAL SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

■ In issue two, Appellant contends the evidence was factually insufficient to

**2.** Articles 14.01 and 14.02 set forth the circumstances under which a peace officer may make a warrantless arrest. TEX.CODE CRIM. PROC.ANN. arts. 14.01–.02 (Vernon 1977). Article 38.23 sets forth the Texas exclusionary rule. *Id.* art. 38.23(a).

**3.** Although Officer Shelley told Appellant that he was under arrest for burglary of a motor vehicle, Appellant could have been arrested

for theft of property more than $1,500 but less than $20,000, which is a state jail felony. *See* TEX.PENAL CODE ANN. § 31.03(e)(4)(A) (Vernon Supp.2001). The State thus argues that the arrest was not unlawful. Because we need not decide this question to dispose of Appellant's issue, we assume without deciding that the arrest was illegal.

support the jury's verdict. In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand, or the adverse finding is against the great weight and preponderance of the available evidence. *Johnson,* 23 S.W.3d at 11. Therefore, the question we must consider in conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak 'as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See id.*

In performing this review, we are to give due deference to the fact finder's determinations. *See id.* at 8–9; *Clewis,* 922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient only where necessary to prevent a manifest injustice from occurring. *See Johnson,* 23 S.W.3d at 9, 12; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

**B. AGGRAVATED ASSAULT ON A PUBLIC SERVANT**

A person commits the offense of assault if the person intentionally or knowingly threatens another with imminent bodily injury. TEX.PENAL CODE ANN. § 22.01(a)(2) (Vernon Supp.2001). Aggravated assault occurs if the person commits an assault under section 22.01 and the person uses or exhibits a deadly weapon during the of-

fense. *Id.* § 22.02(a)(2) (Vernon 1994). The offense is a first degree felony when it is committed against a person whom the actor knows is a public servant while the public servant is lawfully discharging an official duty. *Id.* § 22.02(b)(2).

The accused's intent may be inferred from his words, acts, and conduct at the time of the offense. *Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App. 1991), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992). A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX.PENAL CODE ANN. § 6.03(a) (Vernon 1994). Likewise, a person acts knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). A person also acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

**C. APPLICATION OF THE LAW TO THE FACTS**

In this issue, Appellant alleges the evidence is factually insufficient to support the jury's finding that he intentionally or knowingly threatened Shelley and Carmichael with imminent bodily injury.[4] Specifically, Appellant alleges that the evidence was insufficient to uphold the jury's verdict because:

- the evidence indicated that Appellant was only attempting to conceal the gun in his waistband, not to use it to threaten the officers;

4. Appellant also argues that the evidence is factually insufficient to sustain a deadly weapon finding. Because he does not cite any legal authority in support of this proposition or develop this argument, we dismiss it as inadequately briefed. *See* TEX.R.APP.P. 38.1(h); *Mosley v. State,* 983 S.W.2d 249, 256 (Tex.Crim.App.1998) (op. on reh'g), *cert. de-*

*nied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

We also note that Appellant does not challenge the sufficiency of the evidence to support the jury's determination that Shelley and Carmichael were "lawfully discharging an official duty" at the time of the arrest. TEX.PE-NAL CODE ANN. § 22.02(b)(2).

- Carmichael, not Appellant, pulled the gun out of Appellant's waistband;
- Appellant could not have used the gun to threaten the officers because Carmichael had Appellant's gun hand pinned to the ground during the scuffle; and
- Shelley testified that Appellant never voiced any threats during the scuffle.

In reviewing the entire record, we find that Appellant's evaluation of the evidence is not entirely accurate. Although the evidence *does* reflect that Appellant was attempting to conceal the weapon, there simply is no evidence to support his allegation that he was simply trying to put the weapon back into the waistband of his pants. Nor is there evidence that Carmichael grabbed the gun out of Appellant's waistband. Carmichael testified that Appellant was clutching the gun in his right hand and attempting to conceal the weapon with his left hand. After Carmichael alerted the other officers that Appellant had a gun, he lunged for Appellant's gun hand but missed it. Carmichael said Appellant then thrust the gun into the officer's face, firing it less than a second after Carmichael managed to knock it away.

As Carmichael continued trying to gain control of the weapon, Appellant kept it out of his reach. Carmichael said that even though he had Appellant's wrist pinned to the ground, Appellant kept lifting his hand up to point the gun at Shelly and Carmichael. Even with the two officers on top of him, Appellant refused to put down the gun until Carmichael unholstered his own weapon and put it to Appellant's head.

▮▮▮ Appellant also takes issue with the fact that he did not verbally threaten the officers during the struggle. However, a threat need not be voiced; it can also be communicated by the accused's actions or conduct. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex.Crim.App.1984). Here, Carmichael testified that Appellant was "in a rage" and shouted "F* * * you" before firing the gun a second time. Carmichael said he had "no doubt in [his] mind" that Appellant intended to shoot him or Shelley. Viewing all the facts in a neutral light, as we must in a factual sufficiency review, we hold that there was sufficient evidence for the jury to infer from Appellant's actions and conduct that he intentionally threatened Shelley and Carmichael with imminent bodily injury. We also conclude that the evidence tending to prove Appellant's guilt was not so obviously weak as to undermine confidence in the fact finder's determination, nor was the proof of his guilt greatly outweighed by evidence to the contrary. Issue two is overruled.

## V. LESSER INCLUDED OFFENSE

In his third issue, Appellant contends the trial court erred in refusing his request for a jury instruction on the lesser included offense of misdemeanor deadly conduct. Specifically, Appellant argues that there was some evidence at trial that he recklessly engaged in conduct that placed another in imminent danger of serious bodily injury, which entitled him to an instruction under section 22.05(a) of the penal code.[5] A person commits an offense under this subsection if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. TEX.PENAL CODE ANN. § 22.05(a) (Vernon 1994). Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another, whether or not the actor believed the firearm to be loaded. *Id.* A person acts recklessly "with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a

---

5. Appellant also alleges that because there is evidence that the second shot was fired in the general direction of the Winn–Dixie store, there was some evidence that would support a charge on *felony* deadly conduct under penal code section 22.05(b). TEX.PENAL CODE ANN. § 22.05(b) (Vernon 1994). Appellant did not request an instruction under this subsection at trial and thus waived the right to raise this issue on appeal. TEX.R.APP.P. 33.1.

substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c) (Vernon 1994).

To review this complaint, we apply the two-prong *Rousseau–Aguilar–Royster* test:

[F]irst, the lesser-included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense.

*Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App.)(emphasis omitted), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *see also Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App. 1985); *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App. [Panel Op.] 1981) (plurality op. on reh'g).

Looking at the first prong of the test, the Texas Code of Criminal Procedure defines a lesser included offense both in terms of the offense charged and the facts of the case. TEX.CODE CRIM.PROC. ANN. art. 37.09 (Vernon 1981); *Farley v. State*, 970 S.W.2d 755, 757 (Tex.App.—Fort Worth 1998, no pet.). Therefore, our analysis of whether an offense is a lesser included offense of the charged offense must be made on a case-by-case basis. *See Bartholomew v. State*, 871 S.W.2d 210, 212 (Tex.Crim.App.1994); *Zamora v. State*, 998 S.W.2d 290, 293 (Tex.App.—Fort Worth 1999, pet. ref'd). It does not matter if the charged offense can be established on a theory that does not contain the lesser offense; the issue is whether proof of the charged offense, in *this* case, actually included proof of the lesser included offense as defined in article 37.09. *See Schweinle v. State*, 915 S.W.2d 17, 18 (Tex. Crim.App.1996); *Zamora*, 998 S.W.2d at 293.

Under the second prong of the test, we examine the entire record for evidence upon which a jury could rationally conclude that the defendant, if guilty, is guilty only of the lesser offense. *Rousseau*, 855 S.W.2d at 673; *see also* TEX.CODE CRIM.PROC.ANN. art. 37.08 (Vernon 1981). If there is evidence from any source that negates or refutes the element establishing the greater offense, or if the evidence is so weak that it is subject to more than one reasonable inference regarding the aggravating element, the jury should be charged on the lesser included offense. *Schweinle*, 915 S.W.2d at 19; *Saunders v. State*, 840 S.W.2d 390, 391–92 (Tex.Crim.App.1992). It is not enough, however, that such evidence "would support a conviction for the lesser included offense . . . if that were the only offense the jury was authorized to convict upon." *Moreno v. State*, 858 S.W.2d 453, 459 (Tex.Crim.App.), *cert. denied*, 510 U.S. 966, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993); *Zamora*, 998 S.W.2d at 293. The record must also reflect a rational basis for the jury to reject conviction of the greater offense. *Moreno*, 858 S.W.2d at 459.

In this case, Appellant is not entitled to the instruction on misdemeanor deadly conduct because he cannot meet the second prong of the *Royster* test. In support of his position, Appellant argues that there was some evidence at trial that he did not intentionally threaten Shelley and Carmichael with his gun. Specifically, Appellant alleges there was evidence that (1) he was trying to conceal the gun and "keep it from becoming an issue in his struggle with the officers;" (2) one of the officers, rather than Appellant, actually pulled the gun out of Appellant's waistband; and (3) the officers' attempts to get control of the gun are what actually caused the weapon to fire.

In *Franklin v. State*, the Texarkana Court of Appeals determined under facts similar to this case that the accused was not entitled to the requested instruction.[6] *Franklin v. State*, 992 S.W.2d 698, 704–05 (Tex.App.—Texarkana 1999, pet. ref'd).

6. The offense in *Franklin* did not involve a public servant.

In *Franklin*, the accused was charged with aggravated assault in connection with an incident in which he pointed a gun at two men as they waited in their car. The men began driving away and the accused fired his pistol. *Id.* at 704. The men were not looking at the defendant when they heard the gunshots and could not say whether he had fired the gun in their direction. *Id.* at 704–06.

After reviewing the record, the appellate court determined that the defendant was not entitled to an instruction on misdemeanor deadly conduct because there was no evidence that if he was guilty, he was guilty only of recklessly engaging in conduct that placed another in imminent danger of serious bodily injury. *Id.* at 705. The *Franklin* court explained that:

> The statute defining deadly conduct provides that recklessness and danger are presumed if the actor knowingly points a firearm at or in the direction of another, whether or not the actor believed the firearm to be loaded. *This presumption is inapplicable, however, where the evidence shows, as here, that all of the actor's conduct with reference to use of the weapon was intentional conduct.* In this case, all the evidence shows is that in [appellant's] use of his gun on the occasion in question, it was his conscious objective or desire to engage in the conduct or cause the result. Conversely, there is no evidence that, in his use of that weapon, he acted only knowingly or recklessly. Instead, all of the evidence shows that he intentionally pointed the pistol with the conscious intent to threaten another with imminent bodily injury. The trial court therefore did not err by refusing the requested charge on misdemeanor deadly conduct.

*Id.* (emphasis added).

In this case, although there was evidence that Appellant was trying to conceal the gun, Carmichael's uncontested testimony was that Appellant was trying to conceal the weapon *in his hands*. As we noted in issue two, there is simply no evidence to support Appellant's assertion that one of the officers pulled the gun from Appellant's pants or that Appellant was merely trying to tuck the weapon back into his waistband. Nor was there any evidence that the gun accidently discharged as a result of the officers' struggle with Appellant. Rather, the evidence shows that Appellant intentionally pointed and fired the gun with the conscious intent to threaten Carmichael and Shelley with imminent bodily injury. Because there is no evidence that Appellant acted in any manner other than intentionally, the trial court did not err in refusing the requested charge on misdemeanor deadly conduct. *Id.* at 705. Issue three is overruled.

## VI. PAROLE INSTRUCTION

■ In his fourth issue, Appellant contends that the trial court's jury charge at the punishment phase denied him due process of law because it included an incorrect parole instruction. The trial court included in its charge the mandatory language of article 37.07, section 4(a) of the Texas Code of Criminal Procedure, informing the jury of the existence and mechanics of parole law and good conduct time. TEX. CODE CRIM.PROC.ANN. art. 37.07, § 4(a) (Vernon Supp.2001). Although the instruction tracked the statutory language of article 37.07, Appellant argues that the instruction was incorrect and misleading to the jury because he was ineligible to earn good conduct time toward mandatory supervision release due to the jury's affirmative finding that he used or exhibited a deadly weapon.[7] *See id.;* TEX.GOV'T CODE

---

7. The punishment charge given to the jury contained the following instruction:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or

ANN. § 508.149 (Vernon Supp.2001). Appellant did not object to the charge at trial.[8]

We have decided this issue against Appellant. *See Cagle v. State*, 23 S.W.3d 590, 593–94 (Tex.App.—Fort Worth 2000, pet. filed) (op. on reh'g); *see also Edwards v. State*, 10 S.W.3d 699, 702–03 (Tex.App.—Houston [14th Dist.] 1999, pet. granted); *Luquis v. State*, 997 S.W.2d 442, 443–44 (Tex.App.—Beaumont 1999, pet. granted); *Martinez v. State* 969 S.W.2d 497, 499–501 (Tex.App.—Austin 1998, no pet.); *Garcia v. State*, 911 S.W.2d 866, 869 (Tex.App.—El Paso 1995, no pet.). In *Cagle*, we determined that inclusion of the mandatory charge under these same or similar circumstances was not error. *See Cagle*, 23 S.W.3d at 593–94. We overrule Appellant's fourth point.

## CONCLUSION

Having overruled Appellant's issues on appeal, we affirm the trial court's judgment.

part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

8. Although appellant did not raise this complaint in the trial court, we address the issue in light of the court of criminal appeals' discussion in *Jimenez v. State*, 32 S.W.3d 233, 238–39 (Tex.Crim.App.2000).