[JH1] 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                NO.
2-06-179-CR

 

THE STATE OF TEXAS                                                                STATE

 

                                                   V.

 

JORGE R. IDUARTE                                                                APPELLEE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

In this aggravated assault
case, the State appeals the trial court=s order granting appellee=s motion to suppress.  We
reverse and remand.

Background Facts








 Police officers Travis Eddleman and David
DeLeon of the Fort Worth Police Department were dispatched to the Fossil Ridge
Apartments in Fort Worth on November 22, 2001, based on a call reporting that a
male and female were arguing and that gunshots had been fired.  The officers arrived at the apartment
building at approximately 3:19 a.m. and saw two males and a female
arguing.  The males were Jorge Iduarte,
appellee, and Bacilio Leyva, appellee=s coworker, and the female was Yasamin Iduarte, appellee=s wife.  Officer Eddleman drew
his weapon, held it at his side, and covered Officer DeLeon while Officer
DeLeon conducted a patdown search of the two males.  Officer DeLeon had the two males get on their
knees and hold their hands on top of their heads; Leyva complied immediately,
but appellee took an aggressive fighting stance and had to be told several
times before complying.  Officer DeLeon
testified that appellee was being detained for shooting a gun in a
municipality.  

The officers also determined
that appellee was intoxicated. 
Specifically, appellee had a hard time staying balanced, his eyes were
bloodshot, his speech was slurred, and the officers could smell alcohol on his
breath.  The officers believed that
appellee posed a threat to himself or others due to his intoxication.  

Yasamin was crying, upset,
and screaming, and appellee was agitated and angry.  Yasamin had several red marks around her neck
and chest area, and she was having a hard time speaking.  When questioned, Yasamin stated that she had
been assaulted, but that she did not want to talk about it.  Officer Eddleman then asked Yasamin if she knew
anything about the gun shots.   Yasamin
looked at appellee, then told Officer Eddleman that she Awas not going to talk about that.@        








Next, Yasamin told Officer
Eddleman that she wanted the keys to a truck parked at the apartment complex so
she could leave.  Officer Eddleman had
Yasamin get into her car because she was cold.[1]  According to Yasamin, there were two sets of
keys to the pickup truck.  When Officer
Eddleman asked appellee about the keys, appellee gave one set to him and told
him that the other set was upstairs.  It
was at this point that Officer Eddleman decided that he was going to arrest
appellee for public intoxication.[2]








After being asked about the
keys, appellee began to walk towards the apartment.  When Officer Eddleman suggested, A[W]hy don=t we go get
[the keys]?,@ appellee
stopped and said that there was no electricity. 
Officer Eddleman replied, A[L]uckily, I have my flashlight.@  As appellee went up the
stairs, he began to run faster.  Officer
Eddleman followed him upstairs because he Afelt [appellee] was possibly going to get a weapon.@  By the time Officer Eddleman
caught up to him, appellee was inside the apartment standing at the dining room
table with his back to the door.  Officer
Eddleman testified that he entered the apartment at that point because he did
not want to let appellee out of his sight due to the nature of the call, i.e.
shots being fired, and he was unsure whether there were any other people in the
apartment.  When Officer Eddleman shined
his flashlight on appellee, appellee reached with his right hand out of Officer
Eddleman=s view, held up a board used to hang keys on, and stated that he did
not have Yasamin=s other keys
after all.  They both left the apartment
without incident.    

However, after they left the
apartment, Officer Eddleman saw an empty gun holster and empty gun case outside
the front door and said, AI thought
you said you didn=t have a
gun.@  Appellee replied, AI don=t,@ and leaned down to open the gun case. 
Officer Eddleman told appellee not to open the case, but appellee told
Officer Eddleman that he could open it. 
Officer Eddleman opened it and saw that it was empty.  Officer Eddleman again asked appellee where
the gun was, and appellee became agitated. 
At this point, Officer Eddleman told appellee he was arresting him for
public intoxication.  Appellee began
clenching his fists.  Officer Eddleman
told appellee, A[Y]ou don=t want to fight; I=m not going to lose.@  Appellee shouted, AYou want the gun? I will show you the gun.@ 








Appellee then turned and ran
back into the apartment towards the dining room table.  Officer Eddleman shined the flashlight on
appellee and followed him back inside the apartment.  When Officer Eddleman was within several feet
of appellee, he saw a gun in appellee=s hands and heard a hammer cocking back.  Appellee turned toward Officer Eddleman, who
was now standing a few feet away, and, according to Officer Eddleman, pointed
the gun at his face.  There is disputed
testimony as to whether appellee picked up the gun and pointed it directly at
Officer Eddleman or picked up the gun and stated that he was going to shoot
himself.  Regardless, Officer Eddleman
dropped to his right knee and fired twice, striking appellee two times. 

Before appellee=s aggravated assault trial, appellee filed a motion to suppress,
arguing that his constitutional rights were violated because there was no
probable cause to enter his apartment to obtain the keys.  After a hearing, the trial court held that
the entry into appellee=s apartment
was not for a community caretaking function, was not due to exigent
circumstances, and was not authorized by appellee=s consent, but instead was a mere acquiescence to a showing of police
authority.  Therefore, the trial court
concluded that the officer=s first entry into appellee=s apartment to obtain the car keys was not a valid warrantless
entry.  The trial court also concluded
that the officer=s second
entry circumvented the law and the constitution by creating his own exigent
circumstances.  Consequently, the trial
court granted appellee=s motion to
suppress the evidence of his assault on Officer Eddleman, and the State filed
this appeal.  See Tex. Code Crim. Proc. Ann. art.
44.01(a)(5) (Vernon 2006).








Points on Appeal

In its first point, the State
challenges the trial court=s granting of the motion to suppress on the basis that an independent
crime had occurred after the alleged violation of appellee=s constitutional rights.  In its
second point, the State contends that the trial court improperly held that a
constitutional violation occurred when Officer Eddlemen first followed appellee
into the apartment.  The State asserts
that Officer Eddleman could lawfully stay with appellee at all times once he
determined that there was probable cause to arrest appellee.   

Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give almost
total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of credibility
and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

Stated another way, when
reviewing the trial court=s ruling on
a motion to suppress, we must view the evidence in the light most favorable to
the trial court=s
ruling.  State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006). 
When the trial court makes explicit fact findings, we determine whether
the evidence, when viewed in the light most favorable to the trial court=s ruling, supports those fact findings.  Id. at 818-19.  We then review the trial court=s legal ruling de novo unless its explicit fact findings that are
supported by the record are also dispositive of the legal ruling.  Id. at 819.








We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case, even if the trial court gave the wrong reason
for its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

The Fourth
Amendment protects against unreasonable searches and seizures.  U.S. Const.
amend. IV.  To suppress evidence because
of an alleged Fourth Amendment violation, the defendant bears the initial
burden of producing evidence that rebuts the presumption of proper police
conduct.  Torres v. State, 182
S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488,
492 (Tex. Crim. App. 2005).  A defendant
satisfies this burden by establishing that a search or seizure occurred without
a warrant.  Torres, 182 S.W.3d at
902; Ford, 158 S.W.3d at 492. 
Once the defendant has made this showing, the burden of proof shifts to
the State, which is then required to establish that the search or seizure was
conducted pursuant to a warrant or was reasonable.  Torres, 182 S.W.3d at 902; Ford,
158 S.W.3d at 492.








Whether a search is
reasonable is a question of law that we review de novo.  Kothe v. State, 152 S.W.3d 54, 62 (Tex.
Crim. App. 2004).  Reasonableness is
measured by examining the totality of the circumstances.  Id. at 63.  It requires a balancing of the public
interest and the individual=s right to be free from arbitrary detentions and intrusions.  Id. 
A search conducted without a warrant is per se unreasonable unless it
falls within one of the Aspecifically
defined and well-established@ exceptions to the warrant requirement.  McGee v. State, 105 S.W.3d 609, 615
(Tex. Crim. App.), cert. denied, 540 U.S. 1004 (2003); see Best,
118 S.W.3d at 862.  

Discussion

In its first point, the State
contends that the trial court erred by suppressing evidence that appellee
committed aggravated assault by pointing a pistol at Officer Eddleman because
this was a Anew crime@ that was committed after Officer Eddleman allegedly violated appellee=s constitutional rights.  Here,
the trial court made extensive and detailed written findings of fact which we
take as true unless unsupported by the evidence.  Kelly, 204 S.W.3d at 818.  Because the first issue raised by the State
is a legal issue, we will take all these findings as true and only review the
trial court=s
conclusions of law de novo.  Id.  

When Officer Eddleman and
appellee left the apartment after looking for the truck keys, Officer Eddleman
saw an empty gun holster and gun case on the exterior staircase.  Officer Eddleman stated, AI thought you said you didn=t have a gun,@ and
appellee responded that he did not have one and leaned down to open the
case.  Officer Eddleman told him not to,
and appellee then said that the officer could; the case was empty.  Officer Eddleman next asked appellee where
the gun was, and appellee became agitated. 








At that point, Officer
Eddleman told appellee that he was arresting him for public intoxication, and
appellee clenched his fists.  This drew
Officer DeLeon=s attention,
and he began walking up the steps.  When
Officer Eddleman warned appellee that he should not attempt to fight, appellee
shouted, AYou want the
gun? I will show you the gun.@  Appellee then turned and ran
back into the apartment towards the dining room table, and Officer Eddleman
followed him inside, pointing his flashlight at appellee.[3]  When Officer Eddleman was within a few feet
of appellee, appellee raised the .357 revolver, cocked the hammer, and either
pointed it at Officer Eddleman=s face or stated that he was going to shoot himself.  Officer Eddleman dropped to one knee and shot
appellee two times.








At the suppression hearing,
the trial court concluded that the officers had probable cause to arrest
appellee for public intoxication. 
However, according to the trial court, by not arresting appellee before
entering the apartment, Athe officers
were trying to create a circumstance where they could create exigent
circumstances.@  Because of this initial illegal entry, the
trial court suppressed all of the testimony of appellee=s alleged aggravated assault on Officer Eddleman.  








Under the Texas exclusionary
rule, evidence obtained in violation of state or federal law may not be
admitted against the accused in a criminal case. Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005).  The phrase Aobtained in violation of the law@ contemplates that a crime has been committed, that evidence of a
crime exists, and that the officer violated the law by attempting to obtain
evidence of the previously committed crime. 
State v. Mayorga, 901 S.W.2d 943, 946 (Tex. Crim. App. 1995)
(plurality opinion)[4];
Donoho v. State, 39 S.W.3d 324, 327 (Tex. App.CFort Worth 2001, pet. ref=d); Cooper v. State, 956 S.W.2d 95, 98 (Tex. App.CTyler 1997, pet. ref=d).  Thus, the evidence that
must be excluded under article 38.23 is evidence of the crime that was
committed before the officer=s unlawful search or seizure, not evidence of a crime that was
committed thereafter.  See Mayorga,
901 S.W.2d at 946; Donoho, 39 S.W.3d at 327 (holding that because
appellant committed the aggravated assault after his warrantless arrest,
evidence of the assault was not obtained in Aviolation of the law@); Cooper, 956 S.W.2d at 98 (holding that the evidence of
aggravated assault on a peace officer did not exist at the time the lawful or
unlawful arrest was attempted, and that the alleged illegality of the arrest
was irrelevant to the crime of aggravated assault).  Article 38.23 does not require the exclusion
of evidence of a crime that occurred after the officer=s unlawful search or seizure.  See
Martinez, 91 S.W.3d at 340 (AThat theory is not the law.@).








Here, giving complete
deference to the trial court=s credibility determinations and findings of fact, it is clear that
appellee=s alleged aggravated assault against Officer Eddleman took place after
the officer=s alleged
improper conduct had occurred.  Indeed,
Officer Eddleman had already left appellee=s apartment when he noticed the empty gun case on the landing outside
the apartment and asked appellee about it. 
The record is unclear when, if ever, Officer Eddleman first asked
appellee about the gun, but when the officer continued to question him about
it, appellee became visibly angry.  Then,
when Officer Eddleman told appellee that he was under arrest for public
intoxication, appellee clenched his fists and shouted, AYou want the gun?  I will show
you the gun.@  This heated exchange, combined with the prior
call Officer Eddleman received regarding the argument between the male and
female and the gunshots being fired, appellee=s aggression when the officers initially arrived at the apartment
complex, Yasamin=s admission
that she had been assaulted and her non-verbal responses to questions about the
gunshots, coupled with the presence of the empty gun case outside appellee=s apartment, gave Officer Eddleman reasonable suspicion to believe
that appellee had a gun, had likely fired the missing gun, and now had gone
inside to retrieve it.[5]  See Ford v. State, 158 S.W.3d 488, 492
(Tex. Crim. App. 2005) (holding that reasonable suspicion exists if the officer
has specific, articulable facts which, when combined with rational inference
from those facts, would lead him to reasonably concluded that a particular
person has engaged in criminal activity). 
This reasonable suspicion of criminal activity, coupled with the need
for officer safety, gave Officer Eddleman justification to follow appellee into
the unlighted apartment when he ran inside. 
See Cardenas v. State, 115 S.W.3d 54, 61-62 (Tex. App.CSan Antonio 2003, no pet.) (holding that an officer may follow a
suspect when the officer can articulate reasons why the he must do so for
officer safety).








Additionally, appellee ran
away from Officer Eddleman and into the unlighted apartment after Officer
Eddleman told him that he was arresting him for public intoxication.  Officer Eddlemen certainly had the right, if
not the duty, to follow appellee back into the apartment to apprehend him.[6]  See Tex.
Code Crim. Proc. Ann. art. 15.24 (Vernon 2005); Tex. Penal Code Ann. ' 9.51 (Vernon 2003); Manzi v. State, 56 S.W.3d 710, 717 (Tex.
App.CHouston [14th Dist.] 2001, aff=d, 88 S.W.3d 240 (Tex. Crim. App.
2002).  








Thus, even if Officer
Eddleman=s first entry into the apartment was illegal, his second entry was
legal, and evidence of the alleged assault that occurred after the unlawful
entry was not obtained in violation of the law.[7]
 See Donoho, 39 S.W.3d at
327; Cooper, 956 S.W.2d at 98. 
Because evidence of appellee=s aggravated assault was a separate and new crime distinct from the
alleged unlawful entry, the testimony regarding the assault should not be
suppressed under the exclusionary rule, and the trial court erred by excluding
it.  See Mayorga, 901 S.W.2d at
946; Donoho, 39 S.W.3d at 327; Cooper, 956 S.W.2d at 98.  Accordingly, we sustain the State=s first point.

Because our ruling regarding
the State=s first
point disposes of the appeal, we do not reach the State=s second point.  See Tex. R. App. P. 47.1 (providing that
appellate courts need only address issues that are Anecessary to final disposition of the appeal@); Freeman v. State, 985 S.W.2d 588, 590 (Tex. App.CBeaumont 1999, pet. ref=d) (same).

                                             Conclusion

Having sustained the State=s first point, we reverse the trial court=s order granting the motion to suppress and remand the case to the
trial court for further proceedings consistent with this opinion. 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

 

DAUPHINOT,
J. filed a dissenting opinion.

 

PUBLISH

 

DELIVERED:
April 26, 2007           











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-179-CR

 

 

THE STATE OF TEXAS                                                                STATE

 

                                                   V.

 

 

JORGE R. IDUARTE                                                                APPELLEE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING
OPINION

 

                                              ------------

I must respectfully dissent
from the majority opinion, which substitutes its own findings of fact and
determinations of credibility for those of the trial court.

The trial court went to great
lengths to provide this court with both oral and written findings of fact and
conclusions of law.  The trial court
reminded us that








[i]n
a suppression hearing, the trial court is the sole trier of fact and judge
of the credibility of the witnesses and the weight to be given their
testimony.  Maxwell v. State, 73
S.W.3d 278, 281 (Tex. Crim. App. [), cert. denied, 537 U.S. 1051
(2002);] Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990).  The trial court may accept or
reject any or all of any witness=s testimony.  Alvarado v. State, 853 S.W.2d 17, 23
(Tex. Crim. App. 1993)[;] Allridge v. State, 850 S.W.2d 471, 492 (Tex.
Crim. App. 1991), cert. denied, 510 U.S. 831 . . . (1993).  The trial court resolves all conflicts in
the testimony.  Hawkins v. State,
853 S.W.2d 598, 600 (Tex. App.CAmarillo 1993, no pet.).

 

The trial court made clear to
us that A[t]his case boils down to the credibility of Officer Eddleman@ and that the trial court did not believe his testimony.  The trial court found that AOfficer Eddleman intended to go into the Defendant=s apartment, with or without his permission.@  The trial court concluded that
Officer Eddleman=s entry into
the apartment was not supported as a search incident to arrest, was not
supported by consent, was not for a community caretaking function, and was not
pursuant to exigent circumstances. 
Contrary to the majority=s contention that Appellee unilaterally stood up and began walking
back to the apartment, the trial court concluded that Appellee Amerely acquiesced to the officer=s show of authority.@[1]  We are bound by the trial
court=s determination of this fact.








The evidence before the trial
court shows that someone called the police to report that shots had been
fired.  Before the police illegally
entered his home, Appellee was downstairs in the courtyard, on his knees, with
his hands on top of his head.  Both Officer
Eddleman and Officer DeLeon had their weapons drawn.  Officer DeLeon searched Appellee and the man
with him, who was also on his knees, and found no weapons.  Officer Eddleman had already decided to
arrest Appellee for public intoxication at that point.

Officer Eddleman told
Appellee to go upstairs to his apartment ostensibly to get his estranged wife
an extra set of keys to the pickup after he had already handed over the set in
his pants pocket, but the trial court concluded that Ait was clear his intentions were to look for a weapon.@  When Appellee responded that
he could not go into the apartment because the electricity was off, Officer
Eddleman insisted, stating that he had a flashlight.  After hearing the evidence, the trial court
concluded that AOfficer
Eddleman intended to go into [Appellee=s] apartment, with or without his permission.@








The trial court also noted
that Officer Eddleman claimed on one hand that Appellee was so intoxicated that
he Awas having a hard time keeping a steady balance.  Officer Eddleman also observed bloodshot
eyes, slurred speech, and smelled an odor of an alcoholic beverage on his
breath.@  But  when Officer Eddleman told him to go back to
his apartment, Appellee, according to both officers, Abegan to run up the stairs,@ and Officer Eddleman testified that he Acould not keep up with him,@ despite Officer Eddleman=s observation made, at most, minutes earlier that Appellee was unable
keep a steady balance.

The trial court also
concluded,

It
defies common sense that if you have probable cause to arrest an individual for
public intoxication, you allow that individual, knowing there has been a report
of assault and gunshots fired, [you] allow that individual (who has already
taken an aggressive stance toward officers) to roam, unhandcuffed, back into
his unlighted, dark apartment where you suspect a weapon is located, to
retrieve some keys which were not necessary to either Mrs. Iduarte being able
to leave the scene safely or for any other purpose.

 

. . . .

 

. . . .  To
me, the question is if there is probable cause to arrest the defendant for
public intoxication, which is at any point before the second entry into the
apartment.  It=s
pretty clear from the evidence that=s all they would have had
probable cause to arrest him for.  If
there is that probable cause and they were going to effect an arrest, then
obviously the logical way to handle that would have been to do that at the bottom
of the stairs on the curb where the two people were standing together with the
officers.  By them not doing that, it
seems to me that the officers were trying to create a circumstance where they
could create exigent circumstances. . . . 

 

. . . .  

 

. . . . 
That=s
like saying, okay, I have probable cause to arrest you for possession of a
controlled substance, go in the house and get the controlled substance.  Oh, wait, now I have exigent circumstances to
go in there because he might destroy the evidence.

 








The trial court also pointed
out the discrepancies between Officer Eddleman=s version of the events and Officer DeLeon=s.  Officer Eddleman claimed
that Appellee cocked the hammer and pointed the firearm directly at him.  Officer Eddleman dropped to his knee and shot
two bullets into Appellee. Officer DeLeon, in contrast, testified that Appellee
reached Aon the kitchen table@ and said something to the effect of, AHere is the gun, I am going to shoot myself.@  Officer DeLeon did not testify
that Appellee cocked the hammer.  The
trial court found that Officer DeLeon testified that Appellee picked up the
gun, but this finding is not supported by the record.  The trial court made clear its finding that
Officer Eddleman was not a credible witness. 

In order to conduct a
warrantless search of someone=s home absent consent,[2]
the officer must have both probable cause and exigent circumstances.[3]








In Johnson v. United
States, the Supreme Court of the United States noted that the strong odor
of burning opium emanating from a closed hotel room might well establish probable
cause to believe that someone behind the door was committing a criminal
offense, but Athe
arresting officer did not have probable cause to arrest petitioner until he had
entered her room and found her to be the sole occupant.@[4]  The problem in Johnson
was not the lack of probable cause, but the failure to obtain a search warrant
because there were no exigent circumstances. 
The Court explained,

No
reason is offered for not obtaining a search warrant except the inconvenience
to the officers and some slight delay necessary to prepare papers and present
the evidence to a magistrate. . . .  No
suspect was fleeing or likely to take flight. 
The search was of permanent premises, not of a movable vehicle.  No evidence or contraband was threatened with
removal or destruction, except perhaps the fumes which we suppose in time will
disappear.[5]

 

As the Texas Court of
Criminal Appeals noted in explaining the rationale behind the Johnson
decision,








Until
the officers, who already had probable cause, knocked on her door, the
defendant was blissfully unaware of any police presence and was thus unlikely
to flee or dispose of the contraband during the time the officers obtained a
search warrant.  It is precisely from the
Johnson scenario that the rule that Apolice may not create their
own exigency@ to
make a warrantless arrest or search was born. 
See [Johnson, 33 U.S.] at 16‑17, 68 S. Ct. [at 370]
(concluding that Athe
Government is obliged to justify the arrest by the search and at the same time
justify the search by the arrest.  This
will not do.  An officer gaining access
to private living quarters under color of his office and of the law which he
personifies must then have some valid basis in law for the
intrusion.").  Thus, exigent
circumstances Ado
not meet Fourth Amendment standards if the government deliberately creates
them.@  United States v. Coles, 437 F.3d 361,
366 (3d Cir. 2006) (discussing and following Johnson, collecting cases
dealing with the question of whether police officers have deliberately created their
own exigency to justify a warrantless arrest inside a private home or hotel
room); compare United States v. Munoz‑Guerra, 788 F.2d 295, 298
(5th Cir. 1986) (officers, who had probable cause to obtain a search warrant,
created their own exigency because they knew that their Aknock
and talk@
investigative strategy would require a warrantless entry), with United
States v. Jones, 239 F.3d 716, 720 (5th Cir. 2001) (officers who conducted Aknock
and talk@ to
investigate complaints of criminal activity and identify inhabitants did not
create their own exigency when they saw firearm in plain view through open apartment
door; police did not observe any criminal activity before approaching apartment
and did not know occupants were armed until they were directly in front of open
door), [cert. denied, 534 U.S. 861 (2001)].  Under the Fourth Amendment, courts Alook
to the reasonableness and propriety of the actions and investigative tactics of
the police which precede the exigency relied upon to justify warrantless entry.@  Coles, 437 F.3d at 368.  AThe presence of exigent
circumstances is a finding of fact,@ which appellate courts
review only for clear error or abuse of discretion.  Id. at 366.[6]  

 








The majority appears to dwell
on the issue of reasonable suspicion to believe that there was a gun in the
apartment.  That is not the issue
here.  Instead, the relevant inquiry is
whether Officer Eddleman should have created exigent circumstances to justify
his warrantless entries into the apartment or whether he should have sought a
warrant.  If the presence of exigent
circumstances is a finding of fact that appellate courts review only for clear
error or abuse of discretion, as the Coles court held and the Parker
court adopted,[7] then the creation of
exigent circumstances is a finding of fact that we cannot set aside absent
clear error or an abuse of discretion.

In the case now before this
court, Officer Eddleman claimed that he had probable cause to arrest Appellee
for public intoxication before going into the apartment.  Although the trial court clearly stated that
its granting of Appellee=s motion to
suppress turned on the credibility of the witnesses, and although the trial
court made it clear that Officer Eddleman was not credible, the majority relies
exclusively on Officer Eddleman=s testimony in overturning the trial court=s determination of the facts and the trial court=s application of the law to those facts. 








As the trial court concluded,
Officer Eddleman was determined to go into Appellant=s apartment to search for a firearm because there had been a report of
gunshots.  The majority emphasizes that Aappellee=s alleged
aggravated assault against Officer Eddleman took place after the officer=s alleged improper conduct had occurred.@[8]  Hence, the majority somehow
concludes that the illegal entry into Appellee=s apartment did not require suppression of the evidence obtained after
the illegal entry because AArticle 38.23 does not require the exclusion of evidence of a crime
that occurred after the officer=s unlawful search or seizure.@[9]  In so holding, the majority
takes as true all of Officer Eddleman=s testimony, including that contradicted by Officer DeLeon.

Respectfully, the record is
clear that the offense that Officer Eddleman was determined to investigate and
the offense that required entry into Appellee=s apartment was discharging a firearm, either alone or as part of an
assault.  That offense was complete
before Officer Eddleman arrived on the scene. 
Only Officer Eddleman testified that Appellee pointed a firearm at
him.  This was not Officer DeLeon=s testimony.  The trial court
pointed out the discrepancy in the two officers= testimony.  Nor did the trial
court accept Officer Eddleman=s testimony that suggested that Appellee had denied having a
firearm.  Indeed, the trial court=s Finding of Fact 42 states,

Officer
Eddleman confronts the Defendant and says, AI thought you said you didn=t
have a gun.@  (There was not any testimony that Officer Eddleman
had ever asked the Defendant if he had a gun prior to this point).

 








A new offense was committed
by Appellee after Officer Eddleman=s entry into Appellee=s apartment only if Officer Eddleman was telling the truth and Officer
DeLeon was not.  The trial court did not
find Officer Eddleman to be a credible witness. 
The majority, however, makes its own determination of Officer Eddleman=s credibility by assuming that he, and not Officer DeLeon, told the
truth about where Appellee pointed the gun and whether he cocked the hammer.

The trial court held that
both warrantless entries were unlawful. 
A warrantless entry requires either consent or probable cause and
exigent circumstances.  A police officer
may not create exigent circumstances to avoid the warrant requirement.  The trial court found that Officer Eddleman
had created the exigent circumstance to justify the second warrantless entry
and that the first entry was also unlawful because there was neither consent
nor exigent circumstances.  








The majority relies on three
cases involving resisting arrest or aggravated assault of a police officer
during an arrest to conclude that the evidence in the case before us should not
be suppressed.[10]  Unlike the evidence of the charged offenses
in those three cases, however, the evidence sought by Officer Eddleman when he
illegally entered Appellee=s apartment both times was the gunCthe gun that was allegedly used to fire the shots triggering the 911
call, the gun Officer Eddleman questioned Appellee about, and the same gun that
Officer Eddleman claimed that Appellee later pointed at him.  Consequently, even if evidence of the
purported simple assault were admissible under Mayorga as being evidence
only of the new crime,[11] the
gun, as the object of both the initial investigation and Officer Edlleman=s illegal acts, was not.[12]   The gun was evidence that existed before the
illegal entries and was the sole reason for the illegal entries. 

The trial court had the
opportunity to view the witnesses, listen to their testimony, and determine
their credibility.  The trial court made
clear that the ruling on the motion to suppress was based on the trial court=s determination of the witnesses= credibility.  Because the
majority substitutes its determination of credibility for that of the trial
court, I must respectfully dissent. 

 

LEE ANN DAUPHINOT

JUSTICE

 

PUBLISH

DELIVERED: April 26, 2007











[1]There
were two vehicles at the scene.  Yasamin
was sitting in her own car while Officer Eddleman went to get the keys for the
pickup truck that was also at the apartment complex. 





[2]There
is nothing in the record indicating that, at this point, Officer Eddleman
informed appellee that he was under arrest.  






[3]Although
the trial court found that Officer Eddleman=s credibility was lacking, no
evidence or testimony presented at the suppression hearing contradicted his
version of the incident from when he emerged from the apartment the first time
until he stepped into appellee=s apartment the second
time.  





[4]Although
Mayorga is a plurality opinion and therefore is not binding precedent,
the court of criminal appeals has cited it with approval and stated that it may
be cited for its reasoning.  See
Martinez v. State, 91 S.W.3d 331, 340 & nn.34-35 (Tex. Crim. App.
2002).  





[5]The
dissent mistakenly asserts that we have substituted our own findings of fact
and determinations of credibility for those of the trial court.  On the contrary, the findings of fact made by
the trial court at the suppression hearing were largely based on uncontested
testimony.  The only significant dispute
still unanswered is whether appellee pointed the gun at Officer Eddleman or at
himself, and that is an issue that we leave to the fact finders=
determination at the trial on the merits. Despite the dissent=s
contentions, we have accepted the trial court=s
finding of fact that Officer Eddleman was not a credible witness.  However, we do not accept the trial court=s
conclusion of law that Officer Eddleman=s second entry into the
apartment was illegal.     





[6]The
dissent also claims that Officer Eddleman created an exigent circumstance to
enter appellee=s
apartment.  The dissent claims that
Officer Eddleman Atold
Appellee to go upstairs to his apartment . . . .@  See Dissenting Op. at 3.  However, the reporter=s
record and the trial court=s findings of fact do not
state this; the record and findings of fact show that when Officer Eddleman
asked appellant about the second set of keys, appellant unilaterally stood up
and began walking back to the apartment. 
The dissent also completely ignores Officer Eddleman=s
uncontroverted sighting of the empty gun case and appellee=s
disturbing reactions after the initial alleged illegal search had
concluded, when the two men were out on the landing.  





[7]The
dissent points out the discrepancies between Officer Eddleman=s and
Officer DeLeon=s
version of events.  These discrepancies,
while relevant when considering Officer Eddleman=s
credibility, do not create a factual dispute for this suppression issue.  Indeed, the officers=
testimonies do not conflict over either of Officer Eddleman=s two
entries into the apartment.  Instead,
they conflict on whether or not the actual alleged assault occurred, and the
conflict on that issue should be reconciled at the trial on the merits.    





[1]See Maj.
Op. at 13, n.5.





[2]Schneckloth
v. Bustamonte, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045 (1973).





[3]Payton
v. New York, 445 U.S. 573, 587-88, 100 S. Ct. 1371, 1380-81
(1980).





[4]Johnson
v. United States, 333 U.S. 10, 16, 68 S. Ct. at 367, 370 (1948). 





[5]Id. at
15, 68 S. Ct. at 369.





[6]Parker
v. State, 206 S.W.3d 593, 598 n.21 (Tex. Crim. App. 2006).





[7]Id.;
see also Coles, 437 F.3d at 366.





[8]See Maj.
Op. at 12.





[9]See
id.





[10]See Maj.
Op. at 11-12 (relying on State v. Mayorga, 901 S.W.2d 943, 946 (Tex.
Crim. App. 1995) (plurality opinion); Donoho v. State, 39 S.W.3d 324,
327 (Tex. AppCFort
Worth 2001, pet. ref=d);
and Cooper v. State, 956 S.W.2d 95, 98 (Tex. App.CTyler
1997, pet. ref=d)). 





[11]See
Mayorga, 901 S.W.2d at 946. 





[12]See
id.















 [JH1]

Majority opinion by Justice
Livingston

Dissenting opinion by Justice
Dauphinot