300-15

ORIGINAL

No. 08-12-00298-CR

COURT OF CRIMINAL APPEALS

AUSTIN TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 23 2015

Abel Acosta, Clerk

ROBERT CARVER

VS.

STATE OF TEXAS

On APPEAL FROM 362ND DISTRICT COURT

Denton County, Texas

Cause No's F-2010-1715-D, F-2010-1716-D, F-2010-2243-D

PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

MAR 23 2015

Abel Acosta, Clerk

ROBERT CARVER, Pro se

TDCJ-ID #1830004

Gurney Unit

1385 FM 3328

Palestine, Texas 75803

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

Appellant: Robert Carver

Appellant's Counsel at Trial: Patty A. Tress

        State Bar No. 24048679

        1005 North Elm St.

        Denton, Texas 76201

        Telephone: (972) 325-1758

        Fax: (972) 869-0003

Appellant's Counsel on Appeal: Robert Carver, pro se, TDCJ-ID#1830004

        Gurney Unit

        1385 FM 3328

        Palestine, Texas 75803

Appellee: State of Texas    Judge: Robert Bruce McFarling

Appellee's Counsel at Trial:    On Appeal:

Matthew Shovlin      Charles Orbison

State Bar No. 24002940    State Bar No. 24009335

1450 E. McKinney, Third FL   1450 E. McKinney, Third FL

Denton, Texas 76209    Denton, Texas 76209

Telephone: (940) 349-2600   Telephone: (940) 349-2600

Fax: (940) 349-2601    Fax: (940) 349-2601

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . vii

STATEMENT OF THE CASE . . . . . . . . . . . vii

STATEMENT OF PROCEDURAL HISTORY . . . . . viii

GROUNDS FOR REVIEW . . . . . . . . . . . ix

ARGUMENT

1. Judgment of conviction by jury reflects a conviction of an unindicted offense and the Court of Appeals erred in "NOT" correcting the judicial omissions. . . . . . . . . . . p.1

SUMMARY OF THE ARGUMENT . . . . . . . p.1

2. The erroneous charge did not correct itself in the application paragraph, and Court of Appeals failed to apply

Stare Decisis from the transferred court. . . . . . . . p.2

SUMMARY OF THE ARGUMENT . . . . . . . p.3

3. The Court erred in limiting Appellant's access to the Appellate record, misconstruing Tex. Rules App. Proc. . . . . p.8

SUMMARY OF THE ARGUMENT . . . . . . . . p.8

PRAYER FOR RELIEF . . . . . . . . . . . . . p.15

Appendix . . . . . . . . . . . . . . p.16

# INDEX OF AUTHORITIES

Cases

Devine v. State,
786 S.W.2d 268 (Tex.Crim.App.1989) . . . . . . . . . . . . p. 5

Evitts v. Lucey,
469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) . . . . . . . p. 9

Ex Parte Hawkins,
6 S.W.3d 554, 560 (Tex.Crim.App.1999) . . . . . . . . . p. 6

Ex Parte Patterson,
139 Tex.Crim. 489, 496, 141 S.W.2d 319, 323 (1940) . . . . . . p. 2

Garfias v. State,
381 S.W.3d 626 (Tex.App.-Fort Worth, 2012) . . . . . . . . p. 6

Gonzales,
304 S.W.3d at 846 . . . . . . . . . . . . . . . . p. 6

Greenwood v. State,
823 S.W.2d 660 (Tex.Cr.App.1992) . . . . . . . . . . . p. 9

Griffin v. Illinois,
351 U.S. 12, 18, 76 S.Ct. 585, 590 100 L.Ed 891 (1956) . . . . . . p. 9

Kirtley v. State,

    56 S.W. 3d 48 (Tex. Crim. App. 2001) . . . . . . . . . . p.11

Naji v. State,

    3360 Tex. App. Lexis 2007 (Tex.App.-Fort Worth, 2007) pet. ref'd

    . . . . . . . . . . . . . . . . . . . . . . . p.5

Perez v. State,

    824 S.W. 2d at 568 . . . . . . . . . . . . . p.9

Ramirez v. State,

    5083 Tex. App. Lexis 2003 . . . . . . . . . . . . p.2

Riney

    28 S.W. 3d at 565 . . . . . . . . . . . . . . p.7

Routier v. State,

    112 S.W. 3d 554, 570 (Tex. Crim. App. 2003) . . . . . . . . p.10

Trejo v. State,

    313 S.W.3d 870 (Tex.App.-Houston [14th Dist.] 2010) . . . . . . . p.7

U.S. v. Nunez,

    180 F.3d 227 C.A.5 (Tex.1999) . . . . . . . . . . . p.7

Woodard,

    300 S.W.3d at 411-12 . . . . . . . . . . . . . p.7

Rules

Appendix C,
        Rule 1.1 (a) . . . . . . . . . . . . . . . . p.13

Tex. Rule App. Proc.
        Rule 13.1 . . . . . . . . . . . . . . . . . p.10

Tex. Rule App. Proc.
        Rule 13.2 . . . . . . . . . . . . . . . . . p.10

Tex. Rule App. Proc.
        Rule 34.2 . . . . . . . . . . . . . . . . . p.12

Tex. Rule App. Proc.
        Rule 34.5 . . . . . . . . . . . . . . . . . p.12

Tex. Rule App. Proc.
        Rule 34.5 (a)(13) . . . . . . . . . . . . . p.13

Tex. Rule App. Proc.
        Rule 34.5 (b) . . . . . . . . . . . . . . . p.13

Tex. Rule App. Proc.
        Rule 34.6 . . . . . . . . . . . . . . . . . p.12

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant believes that oral argument may aid the Court's decisional process. Appellant claims he was convicted of an offense that doesn't match the indictment. The judgment differs from the indictment and there is no record of the oral pronouncement. Since the Judgment matches the evidence, the Court incorrectly assumed the erroneous charge given was corrected in the application paragraph, which is false for the charge appellant was indicted on but correct for the charge the evidence pointed towards. Also, Appellant claims the Court erred in not allowing him to be a party to the agreed record. The Court allowed an attorney who was not part of the record any longer and had no part in the appellate process determine what is significant for someone else to do their appeal.

## STATEMENT OF THE CASE

Except as otherwise noted herein, Appellant adopts the statement of the case and facts in the opinion of the Court of Appeals. (See, 08-12-00298-CR, Opinion, p.1-4).

vii

# STATEMENT OF PROCEDURAL HISTORY

1. On January 28, 2015, Court of Appeals Affirmed this conviction.

2. On February 9, 2015, motion for Rehearing was filed.

3. On March 4, 2015, motion for Rehearing was denied.

## GROUNDS FOR REVIEW

### ISSUE NO. 1

1. Judgment of conviction by jury reflects a conviction of an unindicted offense, violating Appellant's due process right to notice, in both the State and Federal government, via the Fifth Amendment to the United States Constitution, under the incorporation doctrine and the Fourteenth Amendment to the United States Constitution.

2. Court of Appeals erred in not correcting the judicial omissions.

3. Can a conviction stand when the jury's oral pronouncement of the punishment verdict and the judgment match but both are inconsistant with the charge on the indictment?

### ISSUE NO. 2

1. Court of Appeals erred by failing to apply the "Stare Decisis precedent" on Appellant's appeal, which was transferred from the second Court of Appeals on October 9, 2012.

2. Court of Appeals erred by suggesting the erroneous jury charge corrected itself in the application paragraph.

ix

3. When jury instructions allow a conviction on an improperly broad theory of liability, should the sufficiency of the evidence under Jackson v. Virginia be measured against the legal theory contained in the instructions actually given, or against the legal theory that should have been given, or another standard?

ISSUE NO. 3

1. Court of Appeals erred by misconstruing many of the Texas Rules of Appellate Procedure and placing limitations on an indigent Appellant, that would not have applied to a non-indigent Appellant, and limited his access to the Appellate record, violating Federal law.

2. Court of Appeals erred in suggesting Kirtley v. State, was distinguishable, disagreeing with the Court of Criminal Appeals, who suggests the entire record is needed for an ineffective assistance of counsel claim during the punishment phase.

3. Can an attorney who has withdrawn from representation, prior to Appellant's brief being filed, determine what issues are to be raised in a brief that someone else is preparing, or determine what is necessary to process someone else's appeal?

X

# ARGUMENT

## ISSUE No. 1

### JUDGMENT OF CONVICTION BY JURY REFLECTS CONVICTION OF UNINDICTED OFFENSE. COURT OF APPEALS ERRED IN "NOT" CORRECTING THE JUDICIAL OMISSIONS.

### SUMMARY OF THE ARGUMENT

CAN A CONVICTION STAND WHEN THE JURY'S ORAL PRONOUNCEMENT OF THE PUNISHMENT VERDICT AND THE JUDGMENT MATCH BUT BOTH ARE INCONSISTENT WITH THE CHARGE ON THE INDICTMENT?

Appellant was indicted of Aggravated Assault, cause NO. F-2010-1715-D, §22.02(a)(2). Judgment indicates Appellant was convicted of §22.02(b)(1). (CR1:136); (AR7:56); (08-12-00298, brief, p1-6). The special findings section reads: Defendant used "and" exhibited a deadly weapon during the commission of the offense and said deadly weapon used "and" exhibited was an ax. There was NO affirmed finding of family violence listed. The bottom of the judgment reads: CARVER 1715-D TRIAL JDMT (Agg Asslt X2 Enhs) tdcj. There was no finding of enhancements. Appellant was indicted on cause NO. F-2010-1716-D, Violation of Protective Order. The indictment read: Under authority of art. 17.292 Code of Criminal Procedure, by intentionally or knowingly committing family violence. The judgment showed no affirmed finding of family violence or any reference to family violence in the special findings section. Therefore, this conviction should not stand. The bottom of this judgment reads:

CARVER 1716-D TRIAL JDMT (Viol Prt Ord x 2 Enhs) tdcj. The bottom of the Judgment for cause No. F-2010-2243-D reads: CARVER 2243-D TRIAL JDMT (PCS x 2cts x 2 Enhs) tdcj. There were no findings of enhancements in any of the causes.

When the oral pronouncement of sentence and the written Judgment vary, the oral pronouncement controls. Such a judgment may be corrected to reflect the trial court's oral pronouncement. Ramirez v. State 5083 Tex. App. Lexis 2003. Appellate Court's have the power to reform judgments if the trial court could have corrected the judgment by nunc pro tunc. This can be done to correct clerical errors in the judgment where those are shown by the record, but it cannot be used to correct "judicial omissions".

Under many circumstances, however, a written judgment which does not accurately reflect the oral pronouncement of sentence is subject to correction via nunc pro tunc motion and order. There is neither need nor constitutional authority to raise an issue of inaccurate or incorrect written judgment, via habeas corpus. Ex Parte Patterson, 139 Tex. Crim 489, 496, 141 S.W.2d 319, 323 (1940).

Appellant argues that the oral pronouncement is missing from the record, therefore, we are to assume the judgment reflects the oral pronouncement, which in the instant case, differs from the indictments. Appellant requests that this court reverse these convictions and order an acquittal, or remand for a new trial.

## ISSUE NO. 2

THE ERRONEOUS CHARGE DID NOT CORRECT ITSELF IN APPLICATION PARAGRAPH, AND COURT OF APPEALS FAILED TO APPLY STARE DECISIS FROM THE TRANSFERRED COURT.

2

## SUMMARY OF THE ARGUMENT

WHEN JURY INSTRUCTIONS ALLOW A CONVICTION ON AN IMPROPERLY BROAD THEORY OF LIABILITY, SHOULD THE SUFFICIENCY OF THE EVIDENCE UNDER JACKSON v. VIRGINIA BE MEASURED AGAINST THE LEGAL THEORY CONTAINED IN THE INSTRUCTIONS ACTUALLY GIVEN, AGAINST THE LEGAL THEORY THAT SHOULD HAVE BEEN GIVEN, OR ANOTHER STANDARD ?

The Court of Appeals suggests that the erroneous charge in case No. 08-12-00298-CR, corrected itself in the application paragraph. Appellant disagrees. The record shows Appellant was convicted of §22.02 (b)(1), a result of conduct offense. The evidence suggests he was convicted of §22.02 (a)(i), a result of conduct offense, due to the jabbing of the victim with the shovel, (not jabbing "at" the victim with the shovel). (RR5:97). Evidence might possibly suggest §22.01 (a)(i), also a result of conduct offense, due to the alleged punch in the face. If the shovel was already in appellant's hand when the alleged punch occurred, then its §22.02 (a)(i), a result of conduct offense. Nothing in Kinser's testimony suggests Appellant picked up the shovel after punching victim in the face. (RR5:90-93). Appellant contends that in each scenario the conduct was result oriented. The focus remains on the result of conduct, even if he uses or exhibits a deadly weapon. The remedy should be a conviction on a lesser-included offense of §22.05 (a). The charges given and culpable mental state supports deadly conduct, §22.05 (a). The result conduct occurred first, there was no prolonged attack, the grabbing of the ax occurred while still holding the shovel. The allowable unit of prosecution was Kinser. The Court uses an allegation, four days prior, that Appellant was acquitted on, to suggest a threat occurred. Appellant requests an acquittal.

Appellant argues that the evidence points towards him committing §22.01 (a)(3), more than any of the other assultive offenses. It reads: intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. (08-12-00298-CR, opinion, p.5-6). There is no disputing that contact was made by the shovel. Kinser testified that the shovel touched her. (RR5:97), The Court of Appeals determined that Kinser was blocking blows from the shovel, (08-12-00298-CR, opinion, p.3), which would require touching. The state wants to give the impression that no physical contact was made with the shovel, by misquoting Kinser's testimony, saying Appellant jabbed "at" her with the shovel. (State's brief p.27). A phrase re-peated throughout trial in both opening statements and closing arguments. This is also a result of conduct offense.

The Court of Appeals incorrectly claims that evidence showed Appellant chased Kinser out of the house on June 16, 2010, threatening to kill her. Appellant argues that the evidence actually showed that he "did not" chase Kinser out of the house or make threats on June 16, 2010, as the jury determined him to be innocent, rendering an acquittal on this offense. (RR7:56). The Court is overriding the jury's decision by claiming the evidence proves Appellant threatened Kinser on June 16, 2010. Using that determination, combined with the alleged striking Kinser with his fist, four days later, to suggest a threat occurred on June 20, 2010. (08-12-00298-CR, opinion, p.8-9). Suggesting the threat occurred prior to the alleged physical assault. Appellant disagrees. The indictment reads: did then and there intentionally and knowingly threaten Angie Kinser with

4

"imminent" bodily injury.... Imminent, as defined by Websters Dictionary, means — ready to take place; giving signs of immediate occurance; near. Appellant also contends that there was no judgment rendered showing that he committed family violence on any of the judgment of convictions by jury. Nothing in the affirmed findings section or the special findings section alleging family violence occurred.

The threat or conduct placing another in fear, must be of Imminent bodily injury. Threatening harm at some point in the future is not sufficient to show threat of imminent bodily injury or death. Numerous threats of future harm evidence is insufficient to prove threat of imminent bodily injury. Devine v. State 786 S.W.2d 268 (Tex. Crim. App. 1989). The Court of Appeals admittingly says Appellant caused bodily Injury to Kinser during the course of the same assaultive conduct. (08-12-00298-CR, Opinion, p.6). Appellant contends that this conduct is result oriented, stemming from one assaultive attack, not a prolonged attack, according to the state "just moments apart." (State's brief p.27). Moments as defined by Websters Dictionary means — Instant, or minute portion of time.

Appellant argues that not only was he deprived his right to notice from being convicted of an unindicted offense, he also suffered double jeopardy because he suffered from two convictions, out of one assault. Naji v. State 3360 Tex. App. Lexis 2007 (Tex. App. — Fort Worth, Apr. 26 2007), pet ref'd. (Appellant's convictions for both Aggravated Robbery and Aggravated Assault of the same person during a single transaction violated double jeopardy).

5

The allowable unit of prosecution is the complaintant. Ex Parte Hawkins 6 S.W.3d 554, 560 (Tex.Crim. App. 1999) (the allowable unit of prosecution for an assaultive offense is each victim).

The fifth and fourteenth Amendments to the united States Constitution protects an individual from being punished more than once for the same offense in a single prosecution. The accused is not to be punished twice for the same criminal act. Appellant cannot be punished for the same criminal act under two distinct statutes when legislature intended the courts to punish only once. Garfias v. State 381 S.W.3d 626 (Tex.App.-Fort Worth, 2012). Violation of Protective Order, which required the Appellant to commit family violence assault, in order to be found guilty, is under penal code § 25.07(g), while Aggravated Assault by threat is under penal code § 22.02 (a)(2). They are not contained in the same statutory section, are not phrased in the alternative, are not named similarly, and have overlapping but not identical punishment ranges. Gonzales 304 S.W.3d at 846.

Appellant insists that because the evidence points towards the result of conduct and the application paragraph eludes to the nature of conduct, the erroneous charge was not corrected.

Appellant claims he was not put on notice that bodily injury assault or serious bodily injury assault would be a factual issue at trial. Although it is alleged in the indictment that Appellant put the complaintant in fear that serious bodily Injury would be inflicted upon her, it is not alleged that Appellant caused serious bodily injury or bodily injury of any Kind. However,

6

the evidence at trial showed Appellant committed bodily injury assault, (which both the State and the Court of Appeals concedes), the actual judgment shows Appellant was convicted of § 22.02(b)(1), causing serious bodily injury assault, an unindicted offense. In the indictment, Appellant was not furnished with notice that he was charged with intentionally or knowingly causing bodily injury or serious bodily injury by striking Kinser with his hand. Trejo v. State 313 S.W.3d 870 (Tex. App.-Houston [14th Dist.] 2010). Therefore, the state of the evidence weighs in favor of finding egregious harm based on the deprivation of Appellant's valuable right to notice, from the indictment. See, Riney 28 S.W.3d at 565 ; Woodard 300 S.W.3d at 411-12.

Appellant argues that the indictment failed to charge the offense for which he was convicted. The jury instruction, without specific reference, impermissibly broadens the indictment. Appellant's indictment did not allege two different offenses. It was a single count indictment alleging a single offense. (See, U.S. v. Nunez 180 F.3d 227 C.A.5 (Tex. 1999)); (the government choose to indict Nunez for resistance by means of assault with a dangerous weapon, and it is not permitted to shift its theory of the case to a separate, independant criminal offense, without obtaining a separate indictment).

Appellant requests that this Court reverse this conviction and render an acquittal on the unindicted offense or find him guilty of a lesser Included offense for which he was Indicted.

7

## ISSUE NO. 3

THE COURT ERRED IN LIMITING APPELLANT'S ACCESS TO THE APPELLATE RECORD, MISCONSTRUING TEX. R. APP. Proc.

## SUMMARY OF THE ARGUMENT

CAN AN ATTORNEY WHO HAS WITHDRAWN FROM REPRESENTATION PRIOR TO APPELLANT BRIEF BEING FILED, DETERMINE WHAT ISSUES ARE TO BE RAISED IN A BRIEF THAT SOMEONE ELSE IS PREPARING, OR DETERMINE WHATS NECESSARY TO PROCESS THEIR APPEAL?

The Court of Appeals erred by claiming that Appellant filed a single handwritten brief. (08-12-00298-CR, Opinion, p.4). The Appellant actually filed a separate individual brief, that was handwritten, for each cause number, addressing different arguments in each, plus four copies of each brief. In addition, the Appellant filed a separate, handwritten reply brief in each cause number, plus four copies of each. The Court of Appeals Clerk, Denise Pacheco, filed the original briefs on September 30, 2013, the State's brief on November 22, 2013, and the Appellant's Reply brief's on December 5, 2013. (See, Court of Appeals Docket Sheet). Its apparent that the Court of Appeals did not consider any of the arguments in the other brief's, in reaching their opinions and in assessing legal sufficiency review.

The Court of Appeals erred in denying Appellant's Motions to have exhibits added to the Reporters/Clerks record. (See, motion for Rehearing, #52-74). Appellant claims that if the requested items would have been made part of the record, the evidence would have been insufficient to support a conviction on case number 08-12-00300-CR.

Appellant argues that he was denied a complete and adequate record on appeal. The appellate record is the essence of an appeal. (See, Perez v. State 824 S.W.2d at 568). The record the Appellant was provided was incomplete and the Appellant was only allowed to view it for 35 days, before the state picked it up. Appellant was forced to write his Reply brief's without the record and he was denied the Statement of facts for him to review. Griffen v. Illinois 351 U.S. 12,18 76 S.Ct. 585,590, 100 L.Ed 891 (1956). Appellant contends that an incomplete record blocks an appellate court's ability to access the record of a trial. The reviewing court has a responsibility to review the entire record and a partial record makes this consideration impossible. It's a Constitutional mandate of a reviewing court to consider "all" relevant evidence. Greenwood v. State 823 S.W.2d 660 (Tex.Cr.App. 1992). A state which chooses to grant accused appellate review, must provide a complete transcript to an Indigent criminal defendant, to assure an adequate and effective appeal. Evitts v. Lucey 469 U.S. 387, 105 S.Ct 830, 83 L.Ed. 2d 821 (1985).

Appellant strongly insists that the entire record is necessary to process his appeal and that he never agreed that the missing

portions of the record were insignificant to the appeal. The Court of Appeals cites Routier to support their opinion, claiming Appellant's claim of ineffective assistance of counsel is based on speculation. Appellant disagrees. In Routier, she did not show she had been deprived of the record, her complaint was a global one. The problem was the process used in editing the notes, not a missing record. In the instant case, the Court Reporter failed to comply with Tex. Rules App. Proc. 13.1 and 13.2, which requires that they make a full record of the trial. (See, motion for Rehearing, #51); Routier v. State, 112 S.W.3d 554, 570 (Tex.Crim.App. 2003).

Appellant suggests that the missing records were significant for the following reasons: 1) he wishes to claim ineffective assistance of counsel during the punishment phase; 2) Counsel did not make any written objections or request any special instructions; 3) failed to object to the admission of extraneous offenses and prior convictions; 4) failed to object to prosecutor's improper comments and when counsel did object, she failed to pursue the objection to an adverse ruling and ask for relief. (08-12-00298-CR, opinion, p.25). The improper comments occurred during both the guilt/innocence and punishment phases. (See, 08-12-00298-CR, brief, p.34-39 & 41-45); (08-12-00298-CR, Reply brief, p.23, 24).

The Court of Appeals incorrectly claims that Kirtley, is distinguishable because the entire record was lost. Appellant argues that the entire record in Kirtley, only consisted of

10

a revocation hearing, whereas the instant case, the missing record consisted of the charge conference, closing arguments and the return of the jury's punishment verdict. Kirtley v. State, 56 S.W.3d 48 (Tex.Crim.App.2001). Appellant contends the missing record is necessary for him to pursue an ineffective assistance of counsel claim, during the punishment phase. Appellant has expressed his desire to pursue this claim from the beginning, when he was granted the right to represent himself on appeal, long before any briefs were submitted. (See, Motion for Rehearing, #94-96,98); (08-12-00300, brief, p.18-19).

The Trial Court erred in its finding that the missing portion of the record is not significant to resolution of the appeal. Appellant contends that the attorney originally appointed to represent him on appeal my have agreed with this finding, however the Appellant never agreed. (See, Motion for Rehearing, #50,92-96). Appellant voiced his objection with his appointed counsel during the hearing but his counsel told him to shut up. Appellant became so frustrated with his appointed counsel, starting with this hearing, he eventually requested to represent himself. Appellant contends that the missing portions of the record may not have been necessary for appointed counsel to prepare his brief, but it was for Appellant. (See, 08-12-00298-CR, Reply brief, p.13-20). Original counsel had already finished a draft of Appellant's brief in February of 2013, a month prior to the hearing about the missing records. He was distracted due to personal family problems and had already decided which issues he was going to brief, refusing to raise issues appellant thought

11

appropriate, and misrepresented the matters he did raise. (see, Motion for Rehearing, #93). Also, the Court of Appeals ordered that the briefs submitted by Appointed Counsel were to be stricken and not considered for any reason. Therefore, Appellant was forced to brief new issues, one of which dealt with the Ineffective assistance of counsel during the punishment phase, however, because of the missing portion, Appellant could only briefly express the alleged ineffectiveness but could not reference cites in the transcripts. (08-12-00298-CR, brief, p. 32); (08-12-00298-CR, Reply brief, p. 17-20).

The Court of Appeals erred in allowing appointed counsel, who had withdrawn from representation and who had No part in writing Appellant's brief, determine what is necessary to process Appellant's appeal. Appellant contends that the decision of whats necessary to process an appeal should be made by the person writing the brief. (Tex. Rules App. Proc 34.2, per 34.5 & 34.6). The word "must" in the rules means its mandatory.

Appellant contends that presentation of a partial record renders a sufficiency of the evidence consideration impossible. Case law warrants that failure to provide a complete record interferes with the judicial process. A string of United States Supreme Court cases, holding Appellant has a substantial due process right to an appellate record on appeal.

Appellant suggests the Court of Appeals erred in denying his motions to have documents added to the record, or to be a party to the contents of the agreed record and that he followed the proper procedures in Tex. Rules App. Proc. in adding them to the record.

12

The Court of Appeals issued an order on August 16, 2013, ordering the trial court clerk to forward a copy of the record to the jail administrator, who in turn, was to forward it to the Appellant. The order suggests that the Appellant will need to "review" the record. (See, order dated 8/16/13). The Appellant filed a Notice to Prepare the Clerk's Record and Notice to Prepare the Reporter's Record on August 22, 2013. After receiving the notices, the trial clerk sent the transcripts to the D.A.'s office, then they were forwarded to the jail administrator, for Appellant's use. Appellant specifically requested the materials to be included in the appellate record. Appellant received the record on August 26, 2013. After reviewing the record, Appellant found it to be incomplete. Appellant properly followed procedures in Tex. Rules App. Proc. 34.5 (a)(13), subject to (b) and Appendix C, Rule 1.1 (a). Four days after reviewing the record, Appellant filed a motion to Amend the record, on August 30, 2013. Appellant requested the following items be added to the appellate record : (1) Lewisville police department lab request form, dated 6/17/10 ; (2) the police departments evidence/property report, dated 6/16/10 ; (3) memo from the Lewisville police department, addressing the firing of evidence technicians, Bill Hines and Nick Rose ; (4) All crime scene photo's from the crime scene on 6/16/10. The Court of Appeals erred in denying this request. On September 5, 2013, Appellant filed a motion for matters for inclusion in the Clerk's record, accompanied with a letter informing the Court that the record was incomplete.

On September 20, 2013, Appellant filed a letter and motion for leave to reconsider a supplemental clerk's record. On September 23, 2013, Appellant filed another motion to amend the record. The Court of Appeals

denied these motions on September 25, 2013. Appellant tried on multiple occassions to have items added to the record. If the Court of Appeals would have added these items to the record, the evidence would have been insufficient to support a conviction on the possession charges. (see, Court of Appeals Docket Sheet).

Appellant insists that the missing portion of the record, in the punishment phase is necessary and significant for him to pursue his ineffective assistance of counsel claim during the punishment phase. The Courts erred in not allowing the Appellant to be a part of the agreed record, since he was the one preparing the appellants briefs. Therefore, Appellant requests that this Court reverse these convictions and remand them for a new trial.

14

## PRAYER FOR RELIEF

For all the reasons stated in this Petition, Appellant respectfully prays that this Court set aside the conviction and sentence, herein, and order an acquittal, or a conviction on a lesser included offense, or in the alternative, a new trial. Appellant further prays that he may have such other and further relief to which he may be just entitled.

Robert Carver

Robert Carver, pro se

1385 FM 3328

Palestine, Texas 75803

TDCJ-ID # 1830004

## CERTIFICATE OF DELIVERY

I, Robert Carver, certify that a true and correct copy of the Appellant's Petition for Discretionary Review was delivered by mail to Court of Criminal Appeals, Supreme Court Bldg., 201 W. 14th St. Rm 106, P.O. Box 12308, Austin Texas, 78711-2308, on this 17 day of March, 2015.

Robert Carver

15



## COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
## EL PASO, TEXAS

| | | |
|---|---|---|
| ROBERT CARVER, | § | No. 08-12-00298-CR |
| Appellant, | § | Appeal from |
| v. | § | 362nd District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC # F-2010-1715-D) |

## **J U D G M E N T**

The Court has considered this cause on the record and concludes there was no error in the judgment. We therefore affirm the judgment of the court below. This decision shall be certified below for observance.

IT IS SO ORDERED THIS 28TH DAY OF JANUARY, 2015.

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

16



## COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
## EL PASO, TEXAS

| | | |
|---|---|---|
| ROBERT CARVER, | § | No. 08-12-00298-CR |
| Appellant, | § | Appeal from |
| v. | § | 362nd District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC # F-2010-1715-D) |

## ORDER

The Appellant's motion for rehearing, having been duly considered, is denied.

Accordingly, it is ORDERED that said motion be and it is hereby denied.

IT IS SO ORDERED THIS 4TH DAY OF MARCH, 2015.

_Ann Crawford McClure_
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

17



| | | |
|---|---|---|
| ROBERT CARVER, | § | No. 08-12-00298-CR |
| Appellant, | § | Appeal from |
| v. | § | 362nd District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC # F-2010-1715-D) |

## OPINION

Robert Carver, proceeding *pro se*, appeals his conviction of aggravated assault with a deadly weapon. A jury found Appellant guilty and assessed his punishment at imprisonment for a term of twenty years. We affirm.

### FACTUAL SUMMARY

Angie Kinser first met Appellant in 2008 or 2009 while she was working at a bar in Frisco, Texas. In early 2010, Kinser was in Dallas and ran into Appellant. They spoke for a while and exchanged phone numbers. Kinser was unemployed and did not have a place to live. Appellant offered Kinser a place to stay and said he might be able to help her find employment. A couple of weeks later, Kinser went out with Appellant and she moved into his home in Lewisville. Within a short period of time, they went to Las Vegas and got married. Both Appellant and Kinser frequently used alcohol and drugs, including methamphetamine and GHB.

On June 16, 2010, one of Kinser's friends, Kerri Kincaid, was visiting at Appellant's

house. All of them were drinking and using methamphetamine and GHB. Appellant went into the bedroom, but Kinser and Kincaid continued to "party." Appellant became upset when Kinser did not join him in the bedroom, but she stayed in another room with Kincaid. Kinser told Kincaid that she wanted to leave Appellant and she suspected he was hiding something on his work computer. Kinser went into the bedroom to retrieve the laptop but Appellant, who was pretending to be asleep, began yelling at her and asking why she had his computer. Kincaid attempted to calm Appellant while Kinser took a shower. After Kinser got out of the shower, she began gathering up some of her belongings to leave. When Appellant realized what Kinser was doing, he became extremely upset and chased her out of the house with a knife and a stun gun while threatening to kill her. Appellant eventually grabbed Kinser and dragged her back into the house while telling Kinser that she was not going anywhere. When Appellant learned that Kincaid had called 911, he became frantic and went into the kitchen. Kinser could hear him doing something in the kitchen. Police officers soon arrived at the residence and separated Appellant, Kinser, and Kincaid. The officers also found methamphetamine in the kitchen sink and bottles of GHB[1] inside of a small refrigerator in the master bedroom. Appellant was arrested for aggravated assault and possession of methamphetamine[2] and GHB. Kinser was also charged with possession of the methamphetamine found in the house.[3]

An emergency protective order was issued on June 17, 2010 to protect Kinser from

---

[1] GHB is the abbreviation of gamma-hydroxybutyrate or gamma-hydroxybutyric acid. GHB is included in Penalty Group 1. TEX.HEALTH & SAFETY CODE ANN. § 481.102(9)(West 2010).

[2] Methamphetamine is in Penalty Group 1. TEX.HEALTH & SAFETY CODE ANN. § 481.102(6).

[3] Kinser entered a plea of guilty and was sentenced to imprisonment for two years.

Appellant. Appellant signed the protective order on that same date and acknowledged he had received a copy of the order at the magistrate's hearing. The protective order expressly prohibited Appellant from committing family violence against Kinser. Unaware that Appellant had bonded out and was at home, Kinser went to Appellant's house on June 20, 2010 to feed their pets. Appellant became angry with Kinser and locked her in the bedroom. She eventually convinced him to let her leave by telling him that the police were looking for her to give her a copy of the protective order.

Kinser met Kincaid at the police station and she reported what Appellant had done. Police officers went with Kinser to the house so she could get her belongings and leave. Kinser waited outside while the officers walked through the house. After the officers assured Kinser Appellant was not home, Kinser went inside and the officers left. Kinser was getting some of her clothes from the dryer in the garage when she turned around and saw Appellant. Appellant struck her face with his fist and she fell onto her back. Appellant picked up a shovel and began trying to jab her with it. Kinser, who was still on the floor, blocked the blows with the shovel as best she could and she pleaded with Appellant to stop. Rather than stopping the assault, Appellant picked up an ax and held it in his hand above Kinser. Kinser kicked him in the abdomen as hard as she could and Appellant fell backwards. She ran into the house and deadbolted the door to the garage before running out of the house. Kinser ran to a neighbor's house but the neighbor refused to help and closed the door. Another neighbor, Peggy Romo, saw Appellant chasing Kinser while she was running as fast as she could and screaming, "He's going to kill me." Romo called 911 and reported what she had seen. When the police arrived,

- 3 -

Appellant was in the house and refused to come outside. He appeared extremely angry and was chopping at the back door of the house with the ax. During this tirade, Appellant directed profanity at Kinser and one of the officers testified that Appellant wanted to "get ahold of her." After several hours, Appellant exited the house and was taken into custody.

A grand jury indicted Appellant for possession of methamphetamine and GHB alleged to have occurred on June 16, 2010 (trial court cause number F-2010-2243-D and appellate cause number 08-12-00300-CR), violation of a protective order alleged to have occurred on June 20, 2010 (trial court cause number F-2010-1716-D and appellate cause number 08-12-00299-CR), and aggravated assault with a deadly weapon alleged to have occurred on June 20, 2010 (trial court cause number F-2010-1715-D and appellate cause number 08-12-00298-CR). The cases were tried together and a jury found Appellant guilty as charged by the indictment in each case.

## APPELLANT'S BRIEF

Appellant was initially represented by appointed counsel on appeal, but he filed a motion to represent himself after his attorney filed the brief on his behalf. The trial court conducted a hearing and warned Appellant of the dangers and disadvantages of self-representation but Appellant persisted in his desire to proceed without counsel. Accordingly, we granted Appellant's motion and struck the brief filed by counsel.

Appellant has three appeals pending before the Court, cause numbers 08-14-00298-CR, 08-14-00299-CR, and 08-14-00300-CR. He filed a single handwritten brief in these appeals and he raises ten issues, some of which do not pertain to the instant appeal. Rather than requiring Appellant to rebrief, we will simply not address the issues which are inapplicable to this appeal.

- 4 -

In order to avoid confusion for the parties, we will use the number assigned to each issue in the brief rather than renumbering the issues.

## NOTICE OF THE CHARGES

In Issue One, Appellant argues that he "suffered from lack of notice, by being convicted of an unindicted offense." This argument is based on Appellant's assertion that the indictment alleged that he committed assault by threatening Kinser with imminent bodily injury, but the State proved he caused bodily injury to Kinser.

The Sixth Amendment of the United States Constitution, and Article I, section 10 of the Texas Constitution guarantee an accused the right to be informed of the nature and cause of the accusation against him in a criminal prosecution. U.S. CONST. amend. VI; TEX.CONST. art. I, § 10; *Curry v. State*, 30 S.W.3d 394, 398 (Tex.Crim.App. 2000); *Agripino v. State*, 217 S.W.3d 707, 711 (Tex.App.--El Paso 2007, no pet.). The charging instrument must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense. *State v. Moff*, 154 S.W.3d 599, 601-02 (Tex.Crim.App. 2004); *Agripino*, 217 S.W.3d at 711.

Section 22.02(a)(2) of the Texas Penal Code provides that a person commits aggravated assault if the person commits assault as defined in Section 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault. TEX.PENAL CODE ANN. § 22.02(a)(2) (West 2011). A person commits assault under Section 22.01 if he (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or

should reasonably believe that the other will regard the contact as offensive or provocative. TEX.PENAL CODE ANN. § 22.01 (West Supp. 2014).

The indictment alleged that Appellant, on or about June 20, 2010:

> [D]id then and there intentionally or knowingly threaten Angie Kinser with imminent bodily injury, and did then and there during the commission of said assault, use or exhibit a deadly weapon, to-wit: an ax, that in the manner of its use or intended use was capable of causing death or serious bodily injury.

Thus, the indictment alleged that Appellant committed aggravated assault under Section 22.02(a)(2) based on the allegations that he committed assault by threat (Section 22.01(a)(2)) and he used or exhibited a deadly weapon during the commission of that assault. The State presented evidence at trial in support of these allegations and the application paragraph of the court's charge required the jury to determine whether Appellant intentionally or knowingly threatened Kinser with imminent bodily injury and used or exhibited an ax during the commission of that offense. The State also presented evidence that Appellant caused bodily injury to Kinser during the course of the same assaultive conduct forming the basis of the prosecution but that evidence does not alter the charged offense. We conclude that the allegations in the indictment are sufficient to give Appellant notice of the charged offense. Issue One is overruled.

## SUFFICIENCY OF THE EVIDENCE

In Issue Two, Appellant challenges the legal sufficiency of the evidence supporting his conviction of aggravated assault. More specifically, he contends that the evidence failed to prove that he threatened Kinser with imminent bodily injury. Appellant's argument focuses on the evidence showing that he did not say anything to Kinser during the confrontation.

- 6 -

*Standard of Review and Relevant Law*

We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318-20, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894 (Tex.Crim.App. 2010). Under the *Jackson* standard, we consider all the record evidence in the light most favorable to the verdict and determine whether a rational jury could have found each element of the offense was proven beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 317-19, 99 S.Ct. at 2788-89; *Laster v. State*, 275 S.W.3d 512, 517 (Tex.Crim.App. 2009).

In conducting our review, we must recognize and respect that the jury is the sole judge of the weight and credibility of witness testimony, and that it is the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). Further, we presume that the jury resolved any conflicts in the evidence in favor of the verdict and, so long as such resolution is rational, we defer to that resolution. *Brooks*, 323 S.W.3d at 894-95; *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793.

The State was required to prove beyond a reasonable doubt that Appellant, intentionally or knowingly, threatened Kinser with imminent bodily injury, and during the commission of the assault, used or exhibited a deadly weapon, to-wit: an ax, that in the manner of its use or intended use was capable of causing death or serious bodily injury. The application paragraph of the jury charge tracked the indictment.

- 7 -

A person commits assault under Section 22.01(a)(2) if he intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse. TEX.PENAL CODE ANN. § 22.01(a)(2). A threat can be communicated by conduct as well as words. *See McGowan v. State*, 664 S.W.2d 355, 357 (Tex.Crim.App. 1984). The State is not required to offer proof that the defendant made any verbal threats. *See Donoho v. State*, 39 S.W.3d 324, 329 (Tex.App.--Fort Worth 2001, pet. ref'd)(op. on reh'g); *Cantu v. State*, 953 S.W.2d 772, 775 (Tex.App.--Corpus Christi 1997, pet. ref'd). When determining whether the defendant committed assault by threat, the crucial inquiry is "whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." *Olivas v. State*, 203 S.W.3d 341, 347 (Tex.Crim.App. 2006).

### The Evidence

The evidence showed that Appellant had chased Kinser out of the house on June 16, 2010 when he was armed with a knife and stun gun. During this incident, Appellant threatened to kidnap and kill Kinser and he told her he had done it before. Just four days later, on June 20, 2010, Appellant surprised Kinser by entering the house and walking up behind her after the police left. He punched her face so hard that it knocked her to floor. Appellant grabbed a shovel and jabbed at Kinser while she was on the floor. When asked to describe Appellant, Kinser testified that he looked "crazy," he was sweating, his veins were "all popped out," and he was "just like an animal." Kinser tried to block the blows from the shovel and pleaded with Appellant to stop. Rather than stop the assault, Appellant picked up an ax and held it above Kinser who was still on the floor. At that moment, Kinser kicked Appellant in the abdomen and

- 8 -

knocked him back giving her an opportunity to escape. A neighbor saw Kinser running from the house as fast as she could with Appellant in pursuit. Kinser was screaming that Appellant was going to kill her.

As noted by Appellant, Kinser specifically testified that Appellant did not say anything to her when he punched her, assaulted her with the shovel, or when he held the ax above her. The absence of verbal threats is not dispositive of the sufficiency issue. We conclude that the evidence of the prior threat, when considered together with Appellant's out-of-control demeanor, and aggressive conduct in striking Kinser with his fist, jabbing at her with a shovel, and holding an ax over her as she lay on the floor, is sufficient to permit a rational jury to find beyond a reasonable doubt that Appellant engaged in conduct that would signify an immediate threat of bodily injury to a person of reasonable sensibility. Issue Two is overruled.

## CHARGE ERROR

In Issue Three, Appellant argues that the guilt-innocence charge is erroneous because: (1) it included the full statutory definitions of intentionally and knowingly and did not limit the definitions to the conduct element; (2) it included the definitions of "bodily injury" and "serious bodily injury" but failed to define "imminent" and "threaten;" (3) it included the phrase "including the person's spouse;" and (4) it failed to define "family violence." Appellant did not raise any of these objections in the trial court.

*Standard of Review*

Appellate review of alleged jury charge error generally involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex.Crim.App. 2012); *Abdnor v. State*, 871 S.W.2d 726,

- 9 -

731 (Tex.Crim.App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(op. on reh'g). First, we must determine whether error occurred. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex.Crim.App. 2013); *Abdnor*, 871 S.W.2d at 732. When determining whether the charge is erroneous, we consider it "as a whole instead of a series of isolated and unrelated statements." *Dinkins v. State*, 894 S .W.2d 330, 339 (Tex.Crim.App. 1995).

If there is error in the charge, we must then analyze whether sufficient harm resulted from the error to require reversal. *Wooten*, 400 S.W.3d at 606. Under this second step, the degree of harm necessary for reversal usually depends on whether the appellant properly preserved the error by objection. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003). If the appellant failed to object to the charge, as in this case, reversal is required only if the error is so egregious and created such harm that the defendant did not have a fair and impartial trial. *Sakil v. State*, 287 S.W.3d 23, 26 (Tex.Crim.App. 2009).

### *Culpable Mental States*

Section 6.03 of the Texas Penal Code defines the culpable mental states of intentionally, knowingly, recklessly, and criminal negligence. *See* TEX.PENAL CODE ANN. § 6.03 (West 2011). The definitions delineate three conduct elements that may be involved in an offense: (1) nature of conduct; (2) result of conduct; and (3) circumstances surrounding the conduct. TEX.PENAL CODE ANN. § 6.03; *Hughes v. State*, 897 S.W.2d 285, 295 n.14 (Tex.Crim.App. 1994); *Cook v. State*, 884 S.W.2d 485, 487 (Tex.Crim.App. 1994). An offense may contain any one or more of these "conduct elements" which alone or in combination form the overall behavior which the Legislature has intended to criminalize, and it is those essential "conduct elements" to which a

culpable mental state must apply. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex.Crim.App. 1989).

A person commits assault by threat under Section 22.01(a)(2) if he intentionally or knowingly threatens another with imminent bodily injury. TEX.PENAL CODE ANN. § 22.01(a)(2). In contrast with bodily injury assault, which is a result-oriented offense, assault by threat is conduct-oriented and focuses upon the act of making a threat regardless of any result the threat might cause. *Landrian v. State*, 268 S.W.3d 532, 536 (Tex.Crim.App. 2008). Assault by threat can only be committed intentionally or knowingly. *Dolkart v. State*, 197 S.W.3d 887, 893 (Tex.App.--Dallas 2006, pet. ref'd); *Marinos v. State*, 186 S.W.3d 167, 174 (Tex.App.--Austin 2006, pet. ref'd). Because aggravated assault by threat contains only the nature of conduct element, the definitions of "intentionally" and "knowingly" included in the court's charge should only reference "nature of conduct." *McQueen*, 781 S.W.2d at 603.

The court's charge included the following definitions of intentionally and knowingly:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct when he is aware of the nature of his conduct. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The State concedes that these definitions are erroneous because they include both nature of conduct and result of conduct, but it maintains that Appellant did not suffer egregious harm because the application paragraph correctly limited the culpable mental states to the relevant conduct element.

- 11 -

The application paragraph reads as follows:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 20th day of June, 2010, in Denton County, Texas the defendant, ROBERT CARVER, did then and there intentionally or knowingly threaten Angie Kinser with imminent bodily injury, and did then and there during the commission of said assault, use or exhibit a deadly weapon, to-wit: an ax, that in the manner of its use or intended use was capable of causing death or serious bodily injury, you will find the defendant guilty of Aggravated Assault, as charged in the indictment.

The application paragraph limited the terms "intentionally" and "knowingly" to Appellant's conduct in threatening Kinser with imminent bodily injury and it does not make reference to any other conduct element. Accordingly, we conclude that the error in the abstract instructions did not result in egregious harm. *Medina v. State*, 7 S.W.3d 633, 640 (Tex.Crim.App.1999)("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious.").

### *"Imminent" and "Threaten" are not Defined*

Appellant next argues that the charge is erroneous because it defined the terms "bodily injury" and "serious bodily injury" but failed to define the terms "imminent" and "threaten". The trial court is required to deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX.CODE CRIM.PROC.ANN. art. 36.14 (West 2007). The trial court is responsible for the accuracy of the jury charge and the accompanying instructions. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex.Crim.App. 2007). The "law applicable to the case" includes the statutory definitions that affect the meaning of the elements of the offense. *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex.Crim.App. 2011); *Lovings v. State*, 376 S.W.3d 328, 337 (Tex.App.--Houston [14th Dist.] 2012, no pet.).

- 12 -

The indictment charged Appellant with aggravated assault by alleging that he intentionally or knowingly threatened Kinser with imminent bodily injury and he used or exhibited a deadly weapon that was in the manner of its use or intended use capable of causing death or serious bodily injury. The terms "deadly weapon," "bodily injury," and "serious bodily injury" are applicable to the case and are statutorily defined. *See* TEX.PENAL CODE ANN. § 1.07 (a)(17)(West Supp. 2014)("Deadly weapon" means: (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."); TEX.PENAL CODE ANN. § 1.07(a)(8)("Bodily injury" means physical pain, illness, or any impairment of physical condition.); TEX.PENAL CODE ANN. § 1.07(a)(46)("Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.). Consequently, the trial court was required to define these terms in the charge. *See Ouellette*, 353 S.W.3d at 870.

The terms "imminent" and "threaten" are not statutorily defined. Words which are not statutorily defined are to be given their usual meanings, and no specific instructions are required. *Smith v. State*, 297 S.W.3d 260, 275 (Tex.Crim.App. 2009); *Martinez v. State*, 924 S.W.2d 693, 698 (Tex.Crim.App. 1996); *Garcia v. State*, 887 S.W.2d 846, 859 (Tex.Crim.App. 1994). Jurors are presumed to attach a common understanding to the meaning of these terms. *See Smith*, 297 S.W.3d at 275. The court's charge is not erroneous because it failed to define these terms.

*"Including the Person's Spouse"*

Appellant next complains that the court's charge broadened the indictment because it utilized the phrase "including the person's spouse." Section 22.02(a)(2) of the Texas Penal Code provides that a person commits aggravated assault if the person commits assault as defined in Section 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault. TEX.PENAL CODE ANN. § 22.02(a)(2). A person commits assault under Section 22.01 if he intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse. TEX.PENAL CODE ANN. § 22.01(a)(2). The trial court did not err by including this element of assault in the charge. Issue Three is overruled.

## HEARSAY

In Issue Five, Appellant contends that the trial court abused its discretion by admitting the hearsay statements Kerri Kincaid made to Officer Shelton under the excited utterance exception.

*Standard of Review and Relevant Law*

A trial court has broad discretion in determining the admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App. 1991). Consequently, an appellate court reviews a trial court's decision admitting or excluding evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010). The trial court's ruling will be overturned only if it is so clearly wrong that the ruling lies outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g).

- 14 -

Hearsay is not admissible except as provided by statute or the Texas Rules of Evidence. TEX.R.EVID. 802. An excited utterance is one exception to the general prohibition against the admission of hearsay. TEX.R.EVID. 803(2). Rule 803(2) provides that an excited utterance is: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX.R.EVID. 803(2). To qualify as an excited utterance, the statement must be a product of a startling occurrence; the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence; and the statement must be related to the circumstances of the startling occurrence. *Couchman v. State*, 3 S.W.3d 155, 159 (Tex.App.--Fort Worth 1999, pet. ref'd), *citing McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App. 1992).

In determining whether a hearsay statement is admissible as an excited utterance, the court may consider the time elapsed and whether the statement was in response to a question, but these two factors are not dispositive. *Zuliani v. State*, 97 S.W.3d 589, 595-96 (Tex.Crim.App. 2003). The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement. *Id.*, 97 S.W.3d at 596; *Salazar v. State*, 38 S.W.3d 141, 154 (Tex.Crim.App. 2001). The reviewing court must determine whether the statement was made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Zuliani*, 97 S.W.3d at 596, *quoting Fowler v. State*, 379 S.W.2d 345, 347 (Tex.Crim.App. 1964).

*Analysis*

Kincaid was the person who called 911 on June 16, 2010. Officer Shelton arrived at the

- 15 -

scene in "well less than 10 minutes" after he received the dispatch and he spoke to Kincaid, who appeared "frazzled," approximately ten minutes after he arrived at the scene. He asked Kincaid what had happened and what she had seen. When Shelton began to state what Kincaid told him, Appellant made a hearsay objection and the trial court sustained it. The State responded that Kincaid's statements to Shelton were admissible under the excited utterance exception to the hearsay rule. Appellant took the witness on *voir dire* and Shelton testified that Kincaid was excited to the point that she was not communicating with him in a normal fashion and was speaking fast. The trial court overruled Appellant's hearsay objection. Shelton then testified that the "motivating event" which caused Kincaid to call the police was that Appellant became upset with Kinser and he chased her around a car with a taser.

Kincaid's statements to Officer Shelton obviously related to the startling event which precipitated her phone call to the police, that is, seeing Appellant chase Kinser with a butcher knife and what Kincaid described as a taser. The record reflects that Kincaid made her statements to Officer Shelton within minutes after the startling event. The fact that Kincaid made her statements to Officer Shelton in response to his general questions asking what had happened and what she had she seen does not make the testimony inadmissible. *See Tejeda v. State*, 905 S.W.2d 313, 316 (Tex.App.--San Antonio 1995, pet. ref'd). Shelton's testimony that Kincaid was excited, not communicating normally, and talking fast provides evidence from which the trial court could have concluded that Kincaid was still dominated by the excitement of the events she had just witnessed. We conclude that the trial court did not abuse its discretion by finding that Kincaid's statements resulted from impulse rather than reason and reflection. *See*

- 16 -

*Amador v. State*, 376 S.W.3d 339, 344 (Tex.App.--Houston [14th Dist.] 2012, pet. ref'd)(holding that robbery victim's statements to police officer, identifying defendant, were admissible under excited utterance exception to hearsay rule, where statements were made shortly after victim was robbed at gunpoint, and other witnesses described victim as being frightened and in an excited state).

### Any Error is Harmless

Even if the hearsay statement is not properly admissible as an excited utterance, its erroneous admission is harmless because the same evidence was admitted through other witnesses. The erroneous admission of evidence is non-constitutional error. *Garcia v. State*, 126 S.W.3d 921, 927 (Tex.Crim.App. 2004). An appellate court must disregard the error unless it affected an appellant's substantial rights. TEX.R.APP.P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble v. State*, 330 S.W.3d 253, 280 (Tex.Crim.App. 2010); *Garcia*, 126 S.W.3d at 927. An error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

Kinser testified that Appellant chased her with a knife and taser and she yelled for Kincaid to call 911. Further, Officer Shelton testified that Kinser told him that Appellant chased her with a taser and her statements to him were consistent with the information he received from dispatch. Given that the challenged hearsay statement is cumulative of other evidence admitted at trial, we conclude that any error in the admission of the hearsay was harmless. *See Amador*,

376 S.W.3d at 344-45 (holding that any error in admission of robbery victim's statements to police officer, identifying defendant, under excited utterance exception to hearsay rule was harmless error, where similar statements were testified to by three other witnesses). Issue Five is overruled.

## EXCLUSION OF EVIDENCE

In Issue Six, Appellant asserts that the trial court abused its discretion by excluding evidence related to the complainant's conviction of theft. During direct examination, the prosecutor elicited testimony from Angie Kinser regarding her prior convictions, including a theft of property over $50 but less than $500. She explained during cross-examination that the theft conviction involved the shoplifting of clothing. Appellant questioned her regarding the details of the offense and Kinser stated she had stolen clothing for herself and her daughter. When she did not remember taking an item of men's clothing, Appellant offered into evidence the complaint and information (Defense Exhibit 1) and the probable cause affidavit prepared by the arresting police officer (Defense Exhibit 2), but the State objected that it was improper impeachment because she had admitted to the prior conviction. The trial court sustained the objection.

Rule of Evidence 609 permits the impeachment of a witness with a prior felony conviction or a crime involving moral turpitude provided the trial court determines that the probative value of the evidence outweighs its prejudicial effect. TEX.R.EVID. 609(a). Theft is a crime of moral turpitude. *LaHood v. State*, 171 S.W.3d 613, 620 (Tex.App.--Houston [14th Dist.] 2005, pet. ref d); *Ludwig v. State*, 969 S.W.2d 22, 28 (Tex.App.--Fort Worth 1998, pet.

ref'd). The evidence regarding the prior conviction may be elicited from the witness or established by public record, but the details of the offense are inadmissible. TEX.R.EVID. 609(a); *Mays v. State*, 726 S.W.2d 937, 953 (Tex.Crim.App. 1986); *Andrews v. State*, 429 S.W.3d 849, 858 (Tex.App.--Texarkana 2014, pet. ref'd). Given that Kinser admitted the prior conviction on direct examination, the trial court did not abuse its discretion by excluding the complaint and information (Defense Exhibit 1). Further, Appellant was not entitled to inquire into or introduce evidence regarding the details of the theft conviction. Thus, the trial court did not abuse its discretion by excluding the probable cause affidavit (Defense Exhibit 2). *See Andrews*, 429 S.W.3d at 858 (holding that defendant was permitted to establish that witness had been convicted of a felony or crime of moral turpitude, but he could not inquire as to the circumstances surrounding the offense). Issue Six is overruled.

## INCOMPLETE RECORD ON APPEAL

In Issue Seven, Appellant argues that his right to an adequate record on appeal has been violated because a portion of the reporter's record is missing, certain exhibits have not been included in the reporter's record, and some documents have not been included in the clerk's record.

### *Missing Portion of the Reporter's Record*

An appellant is entitled to a new trial under the following circumstances: (1) if the appellant has timely requested a reporter's record; (2) if, without the appellant's fault, a significant portion of the reporter's record has been lost or destroyed; (3) if the lost or destroyed portion of the reporter's record is necessary to the appeal's resolution; and (4) if the lost or

- 19 -

destroyed portion of the reporter's record cannot be replaced by agreement of the parties. TEX.R.APP.P. 34.6(f). The rule's requirement that the appellant show that the missing portion of the record is necessary to resolution of the appeal is a harm analysis. *Routier v. State*, 112 S.W.3d 554, 571 (Tex.Crim.App. 2003); *Issac v. State*, 989 S.W.2d 754, 757 (Tex.Crim.App. 1999).

The official court reporter, Molly Bowers, filed the reporter's record and notified the Court that a portion of the record had not been prepared because a substitute court reporter had advised her that he had lost his notes due to a computer malfunction. We ordered the trial court to conduct a hearing to address whether a portion of the reporter's record had been lost or destroyed. *See* TEX.R.APP.P. 34.6(f). It is undisputed that Appellant timely requested a reporter's record. Consequently, our order required the trial court to determine whether a significant portion of the record was lost or destroyed, whether the missing portion of the record is necessary to the appeal, and whether the record can be replaced by agreement of the parties. At that hearing, the State and Appellant, through his counsel, agreed that the missing portions of the reporter's record were the punishment charge conference, closing arguments during punishment, and the return of the jury's punishment verdict. After a discussion on the record between the parties and the trial judge regarding what had transpired at the charge conference, closing arguments, and the return of the punishment verdict, the trial court determined that the missing portion of the reporter's record is not a significant portion. Both Appellant and the State agreed with this finding. Additionally, the attorney appointed to represent Appellant on appeal advised the trial court that he had reviewed the entire reporter's record and he did not believe

- 20 -

that the missing portion of the reporter's record is necessary to the appeal. The trial court entered a written finding that the missing portion of the record is not significant to resolution of the appeal. Finally, the trial court determined that the missing portion of the record could not be replaced by agreement of the parties.

Citing *Kirtley v. State*, 56 S.W.3d 48 (Tex.Crim.App. 2001), Appellant maintains that the missing portion of the reporter's record is necessary to his appeal because he is unable to determine whether his trial attorney is ineffective without the record. In *Kirley*, the appellant was placed on deferred adjudication and the State later moved to adjudicate guilt. *Kirtley*, 56 S.W.3d at 49-50. An appeal was taken but the record of the revocation hearing was lost. *Id.* The appellant claimed that the lost record was necessary to resolution of his complaint that trial counsel was ineffective during the punishment portion of the revocation proceeding. *Kirtley*, 56 S.W.3d at 49-50. The Court of Criminal Appeals concluded that the record was necessary to resolution of the appellant's ineffective assistance of counsel claim.

*Kirtley* is distinguishable because the entire record was lost. In our case, the appellate record includes all of the punishment phase of the trial except for the charge conference, closing arguments, and the return of the jury's punishment verdict. We do not read *Kirtley* as standing for the proposition that a lost portion of a record is always necessary to resolution of an appeal if the appellant claims ineffective assistance of counsel. Each case must be considered on its own facts and a determination must be made whether the missing portion of the record is a significant portion of the reporter's record and whether it is necessary to resolution of the issues presented on appeal.

Appellant contends that the missing portion of the record may demonstrate ineffective assistance of counsel at trial based on two claims of deficient performance: (1) counsel failed to request an accomplice witness instruction; and (2) counsel failed to object to the admission of extraneous offenses and Appellant's prior convictions. Appellant's brief does not include an issue raising an ineffective assistance of counsel claim. Thus, Appellant's assertion that the missing portion of the record might show ineffective assistance of counsel is nothing more than speculation. The Court of Criminal Appeals has held that Rule 34.6(f)'s requirement that the appellant show the missing portion of the record is necessary to his appeal cannot be based on speculation as to what might have been shown in the record. *See Routier*, 112 S.W.3d at 571 (holding that an appellant's suggestion that jury instructions may have been erroneous, without more, does not make that portion of the record necessary to the appeal). We conclude that Appellant has failed to show he is entitled to a new trial under Rule 34.6(f) due to the loss of a portion of the reporter's record.

*Exhibits Not Included in the Reporter's Record*

Appellant next claims that certain exhibits have not been included in the reporter's record. Prior to filing his brief, Appellant filed a motion to supplement the record with the following items: (1) Lewisville Police Department Lab Request Form, dated 6-17-10; (2) Lewisville Police Department Property/Evidence Report, dated 6-16-10 (report no. 10-06943); (3) memo from the Lewisville Police Department addressing the firing of evidence technicians for misappropriation of evidence; and (4) all of the crime scene photographs taking on June 16, 2010 including those not admitted into evidence at trial. In an order entered on September 11,

2013, we denied Appellant's motion to supplement the record because the crime scene photographs which were admitted into evidence and a lab report are included in the exhibits volume and the remaining items were not admitted into evidence. The appellate court, the trial court, or a party may request that the record be supplemented with items which were part of the trial record but omitted from the appellate record. *See* TEX.R.APP.P. 34.6(d). This rule does not permit a party to supplement the record with evidence that was not offered or admitted during the proceedings in the trial court.

Appellant additionally argues that the reporter's record should include a transcription of the grand jury testimony. In one of his motions, Appellant asked the Court to order that the record be supplemented to include the transcript of the grand jury testimony. As we noted in our order entered on September 11, 2013, the reporter's record does not reflect that the grand jury testimony was admitted into evidence. The reporter's record cannot be supplemented with matters which were not part of the record in the trial court. *See* TEX.R.APP.P. 34.6(d).

*Items Excluded from the Clerk's Record*

Appellant also complains that the following items were omitted from the clerk's record: (1) a memo from the Lewisville Police Department addressing the firing of evidence technicians for misappropriation of evidence; (2) the police evidence report listing the items tagged and seized at the scene; (3) the jury panel lists, (4) the strike list of the State and defense; (5) juror information forms; (6) the jury's verdict forms; (7) objections to the charge; (8) and special requested jury instructions and rulings by the trial court. Rule 34.5(c) provides that if a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or a party may

- 23 -

by letter direct the trial court clerk to prepare and file a supplemental clerk's record containing the omitted item. TEX.R.APP.P. 34.5(c)(1).

With respect to the first two items, Appellant asserts that he was provided this information as part of his discovery requests. Based on Appellant's statements, these two items were provided to Appellant by the State, and therefore, the items appear to be part of the State's case file. There is nothing, however, to indicate that the first two items were ever included in the records of the trial court clerk. Accordingly, we do not find that these items have been omitted from the clerk's record. Further, Appellant has not shown how the items are relevant to any issue he has presented on appeal.

A supplemental clerk's record containing the jury panel list and the strike lists was filed after Appellant filed his brief. We notified Appellant that the supplemental record had been filed and gave him an opportunity to file a supplemental brief, but none was filed. In our order dated September 25, 2013, we denied Appellant's request to supplement the record with the juror information forms because he failed to make the required showing of good cause. *See* TEX.CODE CRIM.PROC.ANN. art. 35.29 (West Supp. 2014). Regarding Appellant's sixth request, the clerk's record includes the jury verdicts for both guilt-innocence and punishment as required by TEX.R.APP.P. 34.5(a)(4). The record does not reflect that either party made any written objections to the charge or that there were any special requested instructions. We conclude that the clerk's record has been properly supplemented with the relevant items. Issue Seven is overruled.

# IMPROPER JURY ARGUMENT

In Issue Eight, Appellant contends that the prosecutor made several comments during the opening statement and closing argument which were not supported by the evidence. The State responds that Appellant failed to preserve error with respect to any of the prosecutor's arguments. We agree.

## Preservation of Error

In order to preserve error regarding improper jury argument, a defendant must (1) make a timely and specific objection; (2) request an instruction that the jury disregard the statement if the objection is sustained; and (3) move for a mistrial if the instruction is insufficient to remove the prejudice resulting from the argument. TEX.R.APP.P. 33.1(a); *Cruz v. State*, 225 S.W.3d 546, 548 (Tex.Crim.App. 2007). We have reviewed the record related to each comment and argument identified in Appellant's brief and have determined that Appellant objected to only two of them. Appellant's complaints about the remaining comments and arguments are waived.

During closing argument, the prosecutor invited the jury to consider where the methamphetamine was found, and stated: "And I take you back to the officer's testimony. When they arrived and they looked down the hallway -- and he tells you he can clearly see Robert Carver standing right next to that sink, right next to that sink." The trial court sustained Appellant's objection that the prosecutor had misstated the evidence and the court instructed the jury to "remember the evidence as you received it." Appellant did not move for a mistrial. Thus, Appellant failed to pursue his objection to an adverse ruling and he received all the relief he requested. *See Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App. 2004). Nothing is

- 25 -

presented for our review.

The prosecutor also discussed the evidence related to Appellant going into the house after the officers cleared it and left on June 20, 2010. When he told the jury that the house had a boarded-up window, Appellant objected that it was not in evidence. The trial court did not expressly rule on the objection but it instructed the jury to "remember the evidence as they received it." Appellant did not move for a mistrial. As was the case with the prior argument, the trial court granted Appellant all of the relief he requested and Appellant did not pursue his objection to an adverse ruling. *See Young*, 137 S.W.3d at 69. Issue Eight is overruled.

## EXTRANEOUS OFFENSES

In Issue Nine, Appellant argues that the trial court erred by admitting evidence of his prior convictions. Appellant's brief does not provide record references demonstrating where the claimed error occurred, but we understand Appellant to complain about the admission of his prior convictions during the punishment phase. Evidence may be admitted during the punishment phase on any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant. TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a)(1) (West Supp. 2014). The record demonstrates that Appellant did not object to the admission of the evidence showing his prior convictions. Consequently, Appellant failed to preserve any error related to the admission of this evidence. *See* TEX.R.APP.P. 33.1. Issue Nine is overruled. Having overruled each issue presented on appeal, we affirm the judgment of the trial court.

January 28, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)